STATE OF NORTH CAROLINA v. JACQUELINE B. GRAHAM

No. 743SC429

(Filed 19 February 1975)

1. Conspiracy § 4— conspiracy to murder — indictment

Indictment was sufficient to charge that defendant and others did unlawfully conspire and agree, each with the other and with another named person, to murder one Mary Waldo.

2. Conspiracy § 4— prosecution of only one person

Although at least two persons are required to create a conspiracy, it is not required that more than one person be prosecuted for the offense.

3. Conspiracy § 6— conspiracy to murder — sufficiency of evidence

The State's evidence was sufficient to be submitted to the jury on the issue of defendant's guilt of conspiracy to commit murder where it tended to show that defendant discussed with another the murder of the wife of a man with whom defendant was having an affair and the means by which this might be accomplished, that defendant sent the coconspirator a picture of the victim for identification purposes, that she sent sums of money to the coconspirator, and that after an unsuccessful attempt was made upon the victim's life, defendant stated to a friend who had introduced her to the coconspirator that the coconspirator knew somebody who would "finish the job."

4. Criminal Law § 34; Conspiracy § 5— conspiracy to murder lover's wife — evidence of shooting of defendant's husband

In this prosecution for conspiracy to murder the wife of defendant's lover, evidence tending to connect defendant with the shooting of defendant's husband was competent to show a plan or design on her part to bring about a situation in which she might be free to marry her lover.

5. Criminal Law § 69— telephone conversations — identity of voice

In a prosecution for conspiracy to murder the wife of defendant's lover, testimony by defendant's lover as to statements made by defendant in telephone conversations with him was not inadmissible on the ground that no foundation was laid to establish that the witness recognized defendant's voice so as to identify her as the speaker where defense counsel interposed only general objections to the testimony and at no time questioned whether the witness could identify defendant by her voice, and where the witness testified positively that defendant was the person with whom he spoke on the telephone and there was ample evidence to support the conclusion that he had had full opportunity to become familiar with and could identify defendant by her voice.

6. Criminal Law § 89— corroborating evidence — variation — general objection

The trial court did not err in the denial of defendant's motion to strike an officer's testimony as to statements made to him by two

State's witnesses made on the ground that portions of the statements did not corroborate the prior testimony of the witnesses where substantial portions of the statements did corroborate the prior testimony, the motions to strike were directed to the entire statements, and the court correctly instructed the jury upon the purpose of corroborative evidence and directed the jury not to consider those parts of the statements which did not corroborate the witnesses.

APPEAL by defendant from *Cowper, Judge.* Judgment entered 15 November 1973 in Superior Court, CRAVEN County. Heard in the Court of Appeals 18 June 1974.

Defendant was indicted for conspiring with Samuel McCotter and others to murder Mary Waldo. Defendant pled not guilty. The State's evidence showed: During the fall of 1972 and continuing into the spring of 1973, defendant, a married woman, engaged in an extramarital love affair with Kenneth Waldo, the husband of Mary Waldo. During this period defendant and Kenneth discussed the possibility of getting married if anything ever happened to Mary. Defendant also told Kenneth that if she could get some money together she would like to do away with her husband, Thomas Graham, and that there was a Marine who would do the job for $250.00. In December 1972 defendant and Thomas separated, and Thomas moved to Connecticut. During the Christmas holidays Thomas returned to North Carolina to discuss a possible reconciliation with defendant. While defendant and Thomas were riding in an automobile together, with defendant driving and Thomas sitting on the passenger side of the front seat, defendant stopped the car to pick up a hitchhiker. The hitchhiker got into the back seat, shot Thomas in the head, and then fled. Thomas was taken to the hospital, where he recovered from his wound. Defendant subsequently told Kenneth that the same Marine who shot Thomas had a friend who would plant explosives in Mary's automobile. On another occasion defendant told Kenneth she wanted him to inject air into Mary's veins with a hypodermic needle.

Verna Swift, a fellow employee and friend of defendant's, testified that on one occasion defendant asked her if she knew "any Muslim or Klans or anybody that would do anything for money," to which Verna replied that she did not, but that a relative of Verna's, Samuel McCotter, might know somebody. Verna introduced defendant to Samuel McCotter and was pres-

ent and heard a conversation between defendant and McCotter. Concerning this conversation, Verna Swift testified:

> "Mrs. Graham stated that she wanted to do away with Mrs. Waldo, but that she didn't want her shot or anyway that would show that, you know, that—she wanted it to look like an accident. And they discussed it. Blowing up the car and using hypo needles to shoot air in the vein, which won't show."

On two occasions defendant gave Verna Swift money which, at defendant's direction, Verna delivered to Samuel McCotter. Also at defendant's request, Verna delivered a photograph of Mary Waldo to Samuel McCotter. Defendant had been given this photograph by Kenneth Waldo, who testified:

> "Mrs. Graham wanted a picture for identification purposes, so she could get someone to take care of my wife. . . . I didn't report it to the police, because I was having an affair with Mrs. Graham and I did not want it publicized."

Kenneth Waldo also testified:

> "Mrs. Graham had called me one evening, and told me that it was going to cost fifteen hundred dollars to have my wife done away with. And when she told me that I was more, I guess you might say relaxed, because I knew that I didn't have fifteen hundred dollars and I was fairly sure that she didn't either, and that she didn't have access to the money. So I wasn't too concerned about it. But then she told me she had cashed in some bonds, and that she had borrowed five hundred dollars from a man. But she would not tell me who he was.
>
> \*   \*   \*   \*   \*
>
> " . . . She told me that she had delivered the money to someone in New Bern who was the contact for, I guess you might say, the hit person or the hit man."

Between 19 and 22 April 1973 Kenneth Waldo was a patient in the Craven County Hospital. On 20 April defendant phoned and asked him if his wife would be at the hospital that day. He replied that she would but that their children would be with her. The next day defendant again phoned him and asked if his wife would be at the hospital and if she would be alone. Kenneth replied that she would, but that he did not know if she would be alone. At 8:30 p.m. that evening, as Mary Waldo

returned to and entered her automobile in the hospital parking lot after a visit with her husband, she was struck and injured, but not fatally, by flying glass and pellets from a shotgun blast fired through the windshield of her car by an unknown assailant.

After Mary Waldo was shot, defendant again phoned Kenneth, who told her, "Boy, they really botched that up," to which defendant responded that he was "not to worry about it, that it would be taken care of." On 24 April 1973 Verna Swift talked with defendant at work and asked her what had happened about Mrs. Waldo, to which defendant replied, "The guy blew it. He just blew it." In this conversation defendant also told Verna that "Sammie" knew somebody who would finish the job.

Defendant testified and admitted her affair with Kenneth Waldo but denied that she participated in any conspiracy to injure or murder his wife.

The jury found defendant guilty as charged, and from judgment on the verdict imposing a prison sentence, defendant appealed.

*Attorney General Morgan by Assistant Attorney General John M. Silverstein for the State.*

*Charles K. McCotter, Jr. for defendant appellant.*

PARKER, Judge.

[1, 2] Defendant's motion to quash the indictment was properly denied. Although somewhat awkwardly expressed, the allegations of the indictment were sufficient to charge that defendant and others did unlawfully conspire and agree, each with the other and with Samuel McCotter, to murder Mary Waldo. This is the crime which the prosecution sought to prove, which defendant's evidence was designed to rebut, and upon which the trial judge charged. At all stages of the trial defendant was fully apprised of the exact accusation against her, and the language of the indictment was sufficient to protect defendant from a subsequent prosecution for the same offense and to enable the court to proceed to judgment. It is of no consequence that defendant was the only person charged and brought to trial on this indictment. "Although at least two persons are required to create a conspiracy, it is not required that more than one person be prosecuted for the offense." *State v. Horton,* 5 N.C. App. 141, 145, 167 S.E. 2d 871, 873 (1969), *aff'd,* 275 N.C.

651, 170 S.E. 2d 466 (1969), *cert. denied,* 398 U.S. 959 (1970). Defendant's first assignment of error is overruled.

[3]   Defendant's motions for nonsuit were also properly denied. There was evidence that defendant discussed with Samuel McCotter the murder of Mary Waldo and the means by which this might be accomplished, that defendant sent McCotter a picture of Mary Waldo "for identification purposes," that she sent sums of money to McCotter, and that after the unsuccessful attempt was made upon Mary Waldo's life, defendant stated to the friend who had introduced her to Samuel McCotter that "Sammie" knew somebody who would "finish the job." This evidence was amply sufficient to support a jury verdict finding that defendant and McCotter had conspired and agreed to effect the murder of Mary Waldo. Defendant's assignments of error directed to the denial of her motions for nonsuit are overruled.

[4]   Defendant assigns error to the court's overruling her objections to testimony which tended to implicate her in the shooting of her husband, contending that this testimony was inadmissible as tending to show that she had committed another distinct, independent and separate offense. The rule is that "[e]vidence of other offenses is inadmissible on the issue of guilt if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; but if it tends to prove any other relevant fact it will not be excluded merely because it also shows him to have been guilty of an independent crime." 1 Stansbury's N. C. Evidence (Brandis Revision) § 91, p. 289. Here, the evidence tending to connect defendant with the shooting of her husband was relevant to show a plan or design on her part to bring about a situation in which she might be free to marry her lover. An integral part of that plan called for the elimination of Mrs. Waldo. "Evidence of other crimes is admissible when it tends to establish a common plan or scheme embracing the commission of a series of crimes so related to each other that proof of one or more tends to prove the crime charged and to connect the accused with its commission." *State v. McClain,* 240 N.C. 171, 176, 81 S.E. 2d 364, 367 (1954). There was no error in allowing in evidence the testimony which tended to link defendant with the shooting of her husband.

[5]   Defendant assigns error to the admission in evidence over her objections of testimony by Kenneth Waldo concerning statements made to him by defendant during telephone conversations

between the witness and the defendant. The witness testified that these conversations took place while he was in the hospital on 20 and 21 April 1973, the day before and the day on which his wife was shot, when defendant inquired if Mary Waldo would be visiting at the hospital and if she would be alone. He also testified to statements made to him by defendant in telephone conversations which took place a few days after Mary Waldo was shot. Defendant now contends it was error to admit this testimony because, so she now argues, no sufficient foundation was first laid to establish that the witness recognized defendant's voice so as to properly identify her as the speaker. We note, however, that defendant's counsel interposed only general objections to the witness's testimony concerning these telephone conversations and at no time during the trial questioned whether the witness could or did properly identify defendant as the person talking at the other end of the telephone line. "The broad statement that the conversation of a person at the other end [of a telephone line] is never admissible until he is identified cannot be sustained by authority. . . . It is only necessary that identity of the person be shown directly or by circumstances somewhere in the development of the case, either then or later." *State v. Strickland*, 229 N.C. 201, 208, 49 S.E. 2d 469, 474 (1948). Here, the witness, Kenneth Waldo, had been intimately associated with defendant for many months prior to the time the telephone conversations to which he testified took place. He testified positively that defendant was the person with whom he spoke on the telephone, and there was ample evidence to support the conclusion that he had had full opportunity to become familiar with and could identify defendant by her voice. We note that defendant's counsel, during cross-examination of Kenneth Waldo, at no time attempted to question his ability to identify defendant accurately by her voice. Defendant's assignment of error directed to admission of the testimony concerning statements made by defendant over the telephone is overruled.

[6]   Officer M. E. Windom of the New Bern Police Department, who investigated the shooting of Mrs. Waldo, testified to statements which Verna Swift and Kenneth Waldo had given him during the course of his investigation. Defendant did not object to the introduction of this testimony when it was presented, but after the witness had testified concerning the statement given to him by Verna Swift and after he had testified concerning the statement given him by Kenneth Waldo, defendant's counsel in each instance moved to strike on the grounds that por-

State v. Graham

tions of the statements did not corroborate the prior testimony of Swift and of Waldo and on the further grounds that some portions of the statements related to matters which were not within the personal knowledge of Swift or Waldo and were hearsay. The denial of these motions to strike constitutes the basis of defendant's assignments of error numbers 18, 19 and 20. A careful comparison of the statements given by Swift and Kenneth Waldo to Officer Windom with their prior testimony reveals that, although there were variations between the statements and the prior testimony, substantial portions of the statements did directly corroborate the prior testimony. Defendant's motions to strike were directed to the entire statements and did not point out the portions which defendant contended were objectionable. "Where portions of a document are competent as corroborating evidence and other parts incompetent, it is the duty of the party objecting to the evidence to point out the objectionable portions. Objections to evidence *en masse* will not ordinarily be sustained if any part is competent." *State v. Brooks,* 260 N.C. 186, 189, 132 S.E. 2d 354, 357 (1963). Both before and after the statements were read to the jury, the trial court correctly instructed the jury upon the purpose of corroborative evidence. The last of these instructions ended with a clear direction that the jury should not consider those parts of the statements which did not corroborate the witnesses. Under these circumstances we find no reversible error in the court's denial of defendant's motions to strike, and her assignments of error 18, 19 and 20 are overruled.

Defendant's counsel has been diligent to bring forward in his brief and to argue a large number of additional assignments of error. We have carefully considered all of these and find no prejudicial error. In defendant's trial and in the judgment appealed from we find

No error.

Judges HEDRICK and VAUGHN concur.