STATE OF NORTH CAROLINA v. FREDDY VANCE LOWE

No. 2

(Filed 17 October 1978)

1. **Rape § 3— first degree rape—abbreviated indictment—sufficiency to charge crime**

    An indictment drawn under G.S. 15-144.1 which omitted averments that the offense was perpetrated with a deadly weapon or by inflicting serious bodily injury or that defendant's age was greater than sixteen was nevertheless sufficient to charge him with first degree rape under G.S. 14-21, since it was within the legislature's prerogative to prescribe an abbreviated form of indictment for rape, and an indictment drawn in the abbreviated form sufficiently informed defendant of the accusation against him.

2. **Rape § 5— first degree rape—use of deadly weapon—sufficiency of evidence**

    In a prosecution for first degree rape evidence was sufficient to show that defendant procured the victim's submission through the use of a deadly weapon where such evidence tended to show that defendant had a butcher knife visible on his person when he was in the victim's car; the victim testified that defendant put it to her stomach and that it remained there until they reached the isolated spot where the rape occurred; only then did defendant lay the knife down on the car's floorboard; and while the victim temporarily obtained possession of the knife and moved it without defendant's knowledge to the other side of the car, this action alone was inadequate to deprive him of access to the weapon because, within the close confines of the car, the knife was still within arm's reach of defendant.

3. **Rape § 6.1— difference between first and second degree rape—erroneous jury instruction corrected**

    Though the trial court inaccurately stated the difference between first degree rape and second degree rape upon the jury's request for additional instructions, defendant was not prejudiced since the judge immediately clarified his explanation and eliminated any error and confusion.

4. **Criminal Law § 118.2— first degree rape—State's contention about deadly weapon—jury instruction proper**

    The trial court in a first degree rape prosecution did not err in instructing that it was the State's contention that defendant's use of a knife induced fear in the prosecuting witness, since this contention was clearly supported by the evidence.

APPEAL by defendant from *McKinnon, J.,* 3 October 1977 Session of ALAMANCE Superior Court.

Upon a plea of not guilty, defendant was tried on a bill of indictment, returned 3 October 1977, which charged that on or about 23 June 1977 he, "with force and arms, at and in the county

aforesaid, did, unlawfully, wilfully and feloniously ravish and carnally know Edna Ann Hamby a female, by force and against her will against the form of the statute in such case made and provided and against the peace and dignity of the state. The submission of Edna Ann Hamby was procured by the use of a deadly weapon, to-wit: a knife."

The State's evidence tended to show:

On the evening of 23 June 1977 the prosecutrix was 31 years of age, weighed 125 pounds, was married and was living with her husband. The prosecutrix was not acquainted with defendant and first saw him that evening at about 6:00 p.m. standing in a phone booth outside a convenience store where she had shopped. Neither she nor defendant spoke to each other.

At about 9:30 p.m. that same evening she returned to the store to purchase a snack for her husband, and again she saw defendant standing in the phone booth. As she was getting back into her car after making a purchase, defendant left the booth and approached her on the car's passenger side. Saying that he knew her husband, defendant opened the car door and sat down in the passenger seat. As prosecutrix started her car, defendant placed a butcher knife against her stomach. Keeping the knife at her stomach, he forced her to drive to a deserted spot, a one-lane dirt road between two fields.

At that spot defendant compelled the prosecutrix to smoke marijuana with him. He also ordered her to undress. When she refused, he threatened to kill her if she did not cooperate. She then removed her pants and underpants. Defendant, who had already undressed, placed the butcher knife on the car's floorboard and attempted to get on top of the prosecutrix. While he was doing so, the prosecutrix managed to reach the knife on the floor and take possession of it. She sat up and told defendant that she needed to "use the bathroom". Holding the knife and her clothes, she attempted to open the car door on the driver's side. Defendant told her that he was not going to be fooled by that trick, grabbed her around the neck and ordered her into the backseat. She was scared, and without having attempted to use the knife to defend herself, dropped it beside the seat on the driver's side. As she began crawling over the seat, defendant

grabbed her again and managed to pull her and himself over the seat and into the rear of the car.

Defendant then had intercourse with the prosecutrix. He also forced her to have oral sex with him. She testified that she did not consent to these acts but that she did not resist defendant or struggle with him as she was afraid that he would hurt her.

The prosecutrix then climbed back into the front seat, dressed, and drove the car to a self-service gas station near the store where defendant had gotten into the car. He got out and began looking for the knife. She told him to forget about the knife as she had to get home. He closed the door and she drove off.

Medical testimony offered by the State tended to show both anal and vaginal intercourse. The State's expert witness, who examined the prosecutrix at the local hospital shortly after the incident, testified that she had no cuts, scratches or bruises. Her clothes were not torn.

Defendant's evidence tended to show:

Defendant, who was 26 years old and had one arm crippled by childhood polio, testified that he had met the prosecutrix on the day prior to the alleged rape, that she had told him her name was Gail, and that during the course of a 10-15 minute conversation and a short automobile ride on this occasion she had asked him if he had any "pot". Before departing she asked him to meet her the following afternoon at the convenience store.

Defendant first saw the prosecutrix on the following day between 8:00 and 8:30 p.m. He was standing in a telephone booth at a convenience store where he had agreed to meet her. He walked over to her car and talked to her briefly. She told him that she had to take her daughter home and would return to the store in about thirty minutes.

Prosecutrix returned in about thirty minutes as agreed. She opened the passenger-side door of the car and allowed the defendant to enter. After a brief conversation they drove to an isolated spot on a dirt road. Defendant told her how to get there as he was familiar with the area. At this spot the two of them smoked marijuana together. They then undressed each other and had sexual relations on the backseat of the car. Defendant stated that the prosecutrix was a willing and responsive partner.

Defendant testified that he had a butcher knife with him as he had been fishing and had used the knife to cut a pole. The knife was carried in his belt and was visible; however, he did not take it out and show it to the prosecutrix, threaten her with it or use it to force her to have intercourse with him. He did remove the knife from his belt when he undressed. He put it on the floorboard of the car where it would be out of the way. He did not think about the knife again.

After having intercourse with him, prosecutrix said she had to go home. She drove the defendant to a self-service gas station where he got out of the car. She asked to see him again. He agreed and kissed her goodbye. No attempt to find the knife was made as he was not thinking about it.

The jury returned a verdict of guilty of first-degree rape and from judgment imposing a life sentence, defendant appealed.

*Attorney General Rufus L. Edmisten, by Associate Attorney Thomas F. Moffitt, for the State.*

*Frederick J. Sternberg for the defendant-appellant.*

BRITT, Justice.

[1] By his first assignment of error defendant contends that the indictment upon which he was tried is insufficient to charge him with first-degree rape under G.S. 14-21 and that his motion in arrest of judgment was therefore improperly denied. He argues that G.S. 15-144.1, a newly enacted statute which purports to prescribe the essentials for a bill of indictment for rape, must be construed to require allegation of each statutory element of the degree of rape sought to be charged under G.S. 14-21 if the indictment is to be saved from constitutional infirmity. He contends that an indictment which does not allege every element of the charged offense is constitutionally inadequate as it fails to give notice of the offense sufficient to enable a defendant to prepare his defense and to protect him from double jeopardy.

G.S. 15-144.1, which became effective 1 July 1977, provides:

§ 15-144.1. Essentials of bill for rape.—(a) In indictments for rape it is not necessary to allege every matter required to be proved on the trial; but in the body of the indictment,

after naming the person accused, the date of the offense, the county in which the offense of rape was allegedly committed, and the averment "with force and arms," as is now usual, it is sufficient in describing rape to allege that the accused person unlawfully, willfully, and feloniously did ravish and carnally know the victim, naming her, by force and against her will and concluding as is now required by law. Any bill of indictment containing the averments and allegations herein named shall be good and sufficient in law as an indictment for rape in the first degree and will support a verdict of guilty of rape in the first degree, rape in the second degree, assault with intent to commit rape or assault on a female.

This statute, enacted after the 1973 revision of G.S. 14-21 which divided rape into degrees, clearly authorizes an indictment for first-degree rape which omits averments (1) that the offense was perpetrated with a deadly weapon or by inflicting serious bodily injury or (2) that the defendant's age is greater than sixteen. Proof of these two elements is essential to a conviction for first-degree rape. G.S. 14-21.

While we have not previously passed upon the constitutional validity of the abbreviated form of indictment for rape authorized by this statute, we have long approved G.S. 15-144, a similar statute authorizing a short-form indictment for homicide and the model upon which G.S. 15-144.1 was drafted. *State v. Moore*, 104 N.C. 743, 10 S.E. 183 (1890); *State v. Brown*, 106 N.C. 645, 10 S.E. 870 (1890); *State v. Arnold*, 107 N.C. 861, 11 S.E. 990 (1890). Discussing that earlier modification of the common law rules governing indictments, this court said:

> . . . The indictment would not be good at the common law, because it does not charge the means whereby the prisoner slew the deceased, nor the manner of the slaying, but it is in every material respect such as the statute (Acts 1887, ch. 58) prescribes and declares shall be sufficient. It is, in substance an effect, a formal accusation of the prisoner of the crime specified. It was presented by a grand jury; it shows upon its face the facts that gave the court jurisdiction; it charges, in words having precise legal import, the nature of the offense charged; it specifies with certainty the person charged to have been murdered by the prisoner. By it he was put on

notice and could learn of the charge he was called upon to answer; he could learn from it how to plead and make defense. The reasons of the perpetration of the crime and the manner of its perpetration are of the incidents — not of the substance — of the crime charged. To charge them might facilitate the defense, but this is not essential to it; it is essential that the substance of the crime shall be charged; this gives sufficient notice to put the prisoner on inquiry as to all the incidents and every aspect of it. Nor does this in any degree abridge or militate against the provisions of the Constitution (Art. I, sec. 12), which provides that "No person shall be put to answer any criminal charge except as hereinafter allowed, but by indictment presentment or impeachment." The mere form of the indictment — any particular form — is not thus made essential. The purpose is to require that the party charged with crime by indictment shall be so charged by a grand jury as that he can learn with reasonable certainty the nature of the crime of which he is accused and make defense. As we have said, it is not necessary in doing so to charge the particular incidents of it — the particular means employed in perpetrating and the particular manner of it — and thus compel the State to prove that it was done with such particular means and in such way, and in no other. Such particularity might defeat or delay justice in many cases, as, indeed, it has sometimes done.

The Constitution (Art. IV, sec. 12) confers upon the General Assembly power to regulate and prescribe criminal as well as civil procedure, not inconsistent with its provisions, "of all the courts below the Supreme Court." The form of the indictment prescribed by the statute (Acts 1887, ch. 58) is not inconsistent with any provision of the Constitution. It is sufficient to serve the purpose intended by it, and it is not our province to determine that it is better or worse than the common-law indictment in such cases. . . . *Moore, supra* at 750-751.

This rationale is persuasive in our consideration of G.S. 15-144.1, but standing alone it cannot control our decision. *Moore* did not relieve the State of the burden of alleging each element of murder; rather it eliminated the requirement that the means by which the decedent was slain be alleged. The case was decided

before the adoption in this State of a statute dividing murder into degrees. Absent such a statute all murder was defined as killing with *malice aforethought*. *State v. Benton*, 276 N.C. 641, 174 S.E. 2d 793 (1970). Thus, the Act of 1887, c. 58, now G.S. 15-144, required the allegation of malice aforethought as well as allegation of every other element of the common law crime of murder.

In the Act of 1893, cc. 85 and 281, however, the legislature divided murder into degrees. Section 3 of the Act provided that the new murder statute should not be construed to require any alteration or modification of the form of indictment for murder. In construing this new murder statute it was said that the common law definition of murder was still applicable to murder in the second degree, but that an additional element—that the killing be willful, premeditated and deliberate—must be proven to convict a defendant of murder in the first degree. *State v. Rhyne*, 124 N.C. 847, 33 S.E. 128 (1899).

Despite the statutory addition of this new element, indictments for first-degree murder under the form provided in G.S. 15-144 have been upheld. In doing so the court has relied on the legislative mandate of Chapter 85, Section 3 of the 1893 Session Laws. *State v. Covington*, 117 N.C. 834, 23 S.E. 337 (1895); *State v. Kirksey*, 227 N.C. 445, 42 S.E. 2d 613 (1947). It is now clear that by virtue of G.S. 15-144 premeditation and deliberation do not have to be alleged in an indictment for first-degree murder. *State v. Duncan*, 282 N.C. 412, 193 S.E. 2d 65 (1972). Nor can the term "malice aforethought", which is used in an indictment conforming to G.S. 15-144, "be held to import into the definition [of first-degree murder] the element of premeditation or deliberation. Indeed, it is rather definitely indicated that it relates rather to the prior existence of the malice which motivates the murder than to a previously entertained purpose." *State v. Smith*, 221 N.C. 278, 290, 20 S.E. 2d 313 (1942); *State v. Hightower*, 226 N.C. 62, 36 S.E. 2d 649 (1946); 6 Strong's Index 3d, Homicide § 4, pp. 530-531.

This form of indictment has also been held sufficient to support a conviction for felony murder, *State v. Lee*, 277 N.C. 205, 176 S.E. 2d 765 (1970), or for conspiracy to commit murder, *State v. Graham*, 24 N.C. App. 591, 211 S.E. 2d 805, *cert. denied*, 287 N.C. 262, 214 S.E. 2d 434 (1975).

Read together, *Moore*, *Covington*, and the subsequent cases upholding the validity of indictments under G.S. 15-144 implicitly affirm the power of the legislature to relieve the State of the common law requirement that every element of the offense be alleged. The decisions in those cases, and likewise, our decision in the case *sub judice*, are grounded on the proposition that within constitutionally mandated parameters the legislature has the power to prescribe the form of a bill of indictment. *State v. Harris*, 145 N.C. 456, 59 S.E. 115 (1907); *State v. Holder*, 153 N.C. 606, 69 S.E. 66 (1910). In *Harris*, the court stated this rule explicitly: "The General Assembly has the undoubted right to enact legislation of this character, to modify old forms of bills of indictment, or to establish new ones, provided the form established is sufficient to apprise the defendant with reasonable certainty of the nature of the crime of which he stands charged. 'To be informed of the accusation against him' is the requirement of our Bill of Rights, and unless such legislation is in violation of this principle or in contravention of some express constitutional provision, it should and must be upheld by the courts." Harris, *supra* at 457-458.

In enacting G.S. 15-144.1 the legislature prescribed a new form of indictment for rape. Prior to this enactment it was necessary that an indictment for rape contain allegations of every element of the offense. *State v. Goss*, 293 N.C. 147, 235 S.E. 2d 844 (1977); *State v. Perry*, 291 N.C. 586, 231 S.E. 2d 262 (1977). G.S. 15-144.1, in which the legislature explicitly states that "[i]n indictments for rape it is not necessary to allege every matter required to be proved on the trial," eliminates that requirement. This action is within the legislature's prerogative so long as the newly prescribed indictment still complies with the constitutional requirement that the defendant be informed of the accusation against him. We believe that it does.

An indictment is constitutionally sufficient if it apprises the defendant of the charge against him with enough certainty to enable him to prepare his defense and to protect him from subsequent prosecution for the same offense. The indictment must also enable the court to know what judgment to pronounce in case of conviction. *State v. Squire*, 292 N.C. 494, 234 S.E. 2d 563 (1977); *State v. Russell*, 282 N.C. 240, 192 S.E. 2d 294 (1972); *State v. Dorsett* and *State v. Yow*, 272 N.C. 227, 158 S.E. 2d 15 (1967);

*State v. Burton*, 243 N.C. 277, 90 S.E. 2d 390 (1955); *State v. Greer*, 238 N.C. 325, 77 S.E. 2d 917 (1953); N.C. G.S. 15-153; 7 Strong's N.C. Index 3d, Indictment and Warrant § 9.1. Furthermore, a defendant who feels that he may be taken by surprise at trial may ask for a bill of particulars to obtain information in addition to that contained in the indictment which will clarify the charge against him. *State v. O'Keefe*, 263 N.C. 53, 138 S.E. 2d 767 (1964).

Like G.S. 15-144, the homicide indictment statute, G.S. 15-144.1, requires the State to allege the defendant's name, the victim's name, the date of the offense, and the county wherein the alleged offense was committed. In addition it must allege that the defendant with force and arms "unlawfully, willfully, and feloniously did ravish and carnally know the victim, naming her, by force and against her will." Like the short-form homicide indictment approved in *Moore, supra*, indictments under this statute show on their face facts that give the court jurisdiction. In words having precise legal import, the charged offense is specified. With certainty, both the defendant and victim are named. This indictment form charges the substance of the crime and puts the defendant on notice that he will be called upon to defend against proof of the manner and means by which the crime was perpetrated.

The indictment under which defendant was tried is in compliance with G.S. 15-144.1. Defendant was sufficiently informed of the accusation against him. His motion in arrest of judgment based on insufficiency of the indictment against him was properly denied.

In his second assignment of error defendant asserts that the trial judge erred in denying his motion for a directed verdict. In his third assignment he asserts that the court erred in refusing to set aside the verdict as being against the weight of the evidence. Because resolution of both of these assignments requires an examination of the evidence presented at trial, we shall deal with them together.

A motion for a directed verdict has the same effect as a motion for nonsuit and the test of the sufficiency of the evidence to withstand either motion is the same. *State v. Hunt*, 289 N.C. 403, 222 S.E. 2d 234, *death sentence vacated*, 429 U.S. 809, 97 S.Ct. 46,

State v. Lowe

50 L.Ed. 2d 69 (1976). A directed verdict for the defendant "is properly denied when there is any evidence, whether introduced by the State or defendant, which will support the charges contained in the bill of indictment or warrant, considering the evidence in the light most favorable to the State and drawing every reasonable inference, deducible from the evidence, in favor of the State." *State v. Everhart*, 291 N.C. 700, 231 S.E. 2d 604 (1977). There must be substantial evidence of all material elements of the charged offense. *State v. McKinney*, 288 N.C. 113, 215 S.E. 2d 578 (1975). Where the victim is 12 years of age or older, the elements of first-degree rape are: (1) carnal knowledge of a female person, (2) by force, (3) against the will of the victim, (4) by a defendant over the age of 16, (5) who procures the submission or overcomes the resistance of the victim by the use of a deadly weapon or the infliction of serious bodily injury. *State v. Perry*, 291 N.C. 586, 231 S.E. 2d 262 (1977); G.S. 14-21.

[2] Defendant does not seriously challenge the sufficiency of the evidence offered to prove the first four above-enumerated elements. Clearly there is ample evidence from which the existence of those elements could have been inferred by the jury. The record reveals that the prosecutrix was 31 and the defendant was 26. Defendant admitted that he had intercourse with the prosecutrix. She stated unequivocally that the sexual acts to which she submitted were done by defendant without her consent. Further, she declared that she submitted out of fear that defendant would hurt her if she resisted.

Defendant strenuously contends, however, that the evidence was insufficient to allow the jury to infer the existence of the fifth element. The central thrust of his argument is that prosecutrix rather than defendant had possession of the knife at the time the intercourse occurred and that her consent could not therefore have been procured by the use of a deadly weapon. Thus, he argues that it was improper to submit first-degree rape to the jury as an essential element of that crime was not supported by the evidence. Likewise, he contends that a verdict of guilty of first-degree rape is against the weight of the evidence. We find no merit in either of these contentions.

To convict the defendant of first-degree rape the procuring cause of the victim's submission must be the use of a deadly

weapon or the infliction of serious bodily injury. *State v. Dull*, 289 N.C. 55, 220 S.E. 2d 344 (1975), *death sentence vacated*, 428 U.S. 904, 96 S.Ct. 3211, 49 L.Ed. 2d 1211 (1976). It is sufficient that the defendant display the weapon to the victim, threatening her by brandishment or otherwise, and that she knows, or reasonably believes, that the weapon remains readily accessible to him. *State v. Thompson*, 290 N.C. 431, 226 S.E. 2d 487 (1976).

In the case at hand defendant admittedly had the knife with him when he was in the car with the prosecutrix. She testified that he put it to her stomach and that it remained there until they reached the isolated spot where the rape occurred. Only then did defendant lay the knife down on the car's floorboard. While the prosecutrix temporarily obtained possession of the knife and moved it without defendant's knowledge to the other side of the car, this action alone was inadequate to deprive him of access to the weapon. Within the close confines of the automobile the knife was still within arm's reach of defendant.

We find this evidence, viewed in the light most favorable to the State, sufficient to support an inference by the jury that the submission of the victim was obtained by the use of a deadly weapon. The trial judge correctly submitted this issue to the jury.

We also hold that the trial judge did not err in refusing to set aside the jury's verdict. After a verdict has been rendered by the jury it is within the trial judge's discretion to grant a motion to set aside the verdict as against the weight of the evidence. Absent an abuse of discretion, his ruling on such a motion is not reviewable on appeal. *State v. Witherspoon*, 293 N.C. 321, 237 S.E. 2d 822 (1977). The evidence in this record supports the jury's verdict. We find no abuse of discretion.

[3] In his fourth assignment of error defendant contends that the court erred in instructing the jury upon second-degree rape following the jury's request for additional instruction on first and second-degree rape. The court instructed as follows:

> Second degree rape differs from first degree rape only in that it is not necessary that it be proved that a deadly weapon was used to overcome her resistance. There must have been force used or the threat of force sufficient to overcome her resistance, but it need not have been with a deadly

weapon. So for you to find the defendant guilty of second degree rape the State must prove four things. First, that the defendant had sexual intercourse with the prosecuting witness. Second, that he used or threatened to use force sufficient to overcome any resistance. And third, that she did not consent and that it was against her will. Also, the element of the defendant being over sixteen is not an essential element of second degree rape. So those are the requirements for the two crimes and the difference being that for second degree rape there need not be proof that the defendant was over sixteen years of age or that he used a deadly weapon to procure her submission.

When the entire paragraph is read in context, and in view of the evidence in this case, the challenged instruction is a clear and correct explanation of the differences between the charges of first and second-degree rape. While the first sentence of this instruction, standing alone, inaccurately states the applicable law, the trial judge immediately within the same paragraph of the charge clarified his explanation and eliminated any error or confusion. In this action we find no prejudice to the defendant. *State v. Foster*, 284 N.C. 259, 200 S.E. 2d 782 (1973).

[4] In his final assignment of error defendant contends that the court should not have instructed the jury that it was the State's contention that defendant's use of a knife induced fear in the prosecuting witness and caused her to submit. He argues that this contention is not supported by the evidence.

We disagree. The evidence reviewed earlier in this opinion clearly is supportive of such a contention. A statement of a valid contention based on competent evidence is not error. *State v. Black*, 283 N.C. 344, 196 S.E. 2d 225 (1973); *State v. Virgil*, 276 N.C. 217, 172 S.E. 2d 28 (1970). Furthermore, the clear rule is that contentions which are thought to be objectionable by one of the parties must be brought to the attention of the trial judge so that he may correct any inadvertent misstatement and thereby avoid the necessity for a new trial. Failure to do so constitutes a waiver of such objections. *State v. Goines*, 273 N.C. 509, 160 S.E. 2d 469 (1968).

In defendant's trial and the judgment appealed from, we find

No error.