Albert Charles BURGESS, Jr.,
Petitioner,

v.

J.H. GRIFFIN, Superintendent of McCain
Prison Unit, and the State of North
Carolina, Respondents.

No. C–C–82–715–M.

United States District Court,
W.D. North Carolina,
Charlotte Division.

May 10, 1984.

Steven Pixley, Belmont, N.C., Thomas J. Andrews, Durham, N.C., for petitioner.

Barry McNeill, Associate Atty. Gen., Raleigh, N.C., for respondents.

## ORDER GRANTING HABEAS CORPUS

McMILLAN, District Judge.

On October 12, 1983, this court heard evidence on petitioner's claim for habeas corpus relief. The parties have submitted additional memoranda in support of their respective positions. Based on the evidence and arguments presented, the court makes the following findings of fact and conclusions of law:

### I. FINDINGS OF FACT

A. *Introduction*

1. Petitioner was prosecuted in the Superior Court of Gaston County, North Carolina, for alleged multiple offenses involving sexual activity with numerous young boys. *See* R.Ex. 1. He pleaded guilty as to some of those acts, in violation of state criminal law, N.C.G.S. § 14–202.1, and was ultimately sentenced to two consecutive ten year terms in prison. P.Exs. 6, 43, 44. He now seeks habeas corpus relief.

B. *In September, 1978, assistant District Attorney Stroud questioned petitioner in Stroud's office after giving the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).*

2. In mid-September, 1978, assistant District Attorney Jay Stroud visited petitioner, unannounced, at petitioner's house and requested him to accompany Stroud to Stroud's office in the Gaston County, North Carolina court house. R.Ex. 1; Burgess testimony, Tr. pp. 15–17; Stroud testimony, Tr. pp. 83–84.

3. Stroud advised petitioner of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before questioning him. Stroud testimony, Tr. p. 84.

4. Prompted by questions from Stroud, petitioner confessed to sexual conduct with young boys. Petitioner supplied Stroud with information about those acts, including the names of many of the boys and the times those incidents occurred. R.Ex. 1; Burgess testimony, Tr. p. 19; Stroud testimony, Tr. pp. 84–85.

C. *Petitioner and Stroud entered into a plea agreement in which Stroud agreed to seek an indictment charging only one offense of the many offenses occurring before September 1978, and Burgess agreed to attend counseling, go to court, waive a defect in the indictment, and plead guilty.*

5. At that mid-September 1978 meeting in Stroud's office, and in the months following that meeting, Stroud (on behalf of the state) and petitioner entered into an agreement under which petitioner would, among other things, plead guilty to one charge, and Stroud would, among other things, request an indictment on only one count which would represent all possible charges against petitioner for acts done before that date. R.Ex. 1; Burgess testimony, Tr. pp. 21–11; Caldwell testimony, Tr. pp. 63–64; Stroud testimony, Tr. pp. 88, 95–97, 121.

6. Petitioner's obligations under the agreement were to attend counseling regularly, to go to court and plead guilty, to waive a defect in the indictment brought against him, and to plead guilty to a single count of taking indecent liberties with an unnamed minor. R.Ex. 1; P.Exs. 45, 46; Burgess testimony, Tr. pp. 21–24, 27, 41–42; Caldwell testimony, Tr. pp. 63–65, 67–68, 76; Stroud testimony, Tr. pp. 88–92, 95–97, 121.

7. The state's obligations under the agreement were to seek an indictment which charged petitioner with a single count of taking indecent liberties with an unnamed minor, and to forego bringing any further charges against petitioner for simi-

lar acts committed before September 1978. R.Ex. 1; P.Exs. 45, 46; Burgess testimony, Tr. pp. 21–24, 27, 41–42; Caldwell testimony, Tr. pp. 63–65, 67–68, 76; Stroud testimony, Tr. pp. 88–92, 95–97, 121.

8. Neither party contemplated that any obligations under the agreement would continue after petitioner was convicted. Both parties expected that, upon accepting petitioner's guilty plea, the court would pronounce a sentence consistent with the agreement. R.Ex. 1; Burgess testimony, Tr. p. 27; Caldwell testimony, Tr. pp. 64, 66–67; Stroud testimony, Tr. pp. 121–122.

9. Petitioner says that Stroud also promised that petitioner would receive only a suspended sentence as punishment. Burgess testimony, Tr. pp. 18–19, 22. Stroud denies that he promised any particular sentence; he also says that he did not promise to recommend any particular sentence. Stroud testimony, Tr. pp. 89, 92; P.Exs. 45, 46. Stroud did promise, however, to speak favorably of the petitioner when the court considered sentencing petitioner. Caldwell testimony, Tr. pp. 68–69; Stroud testimony, Tr. p. 92. It is unnecessary to make a finding on this disputed fact.

10. Stroud's objectives in seeking these terms were to avoid any mention of petitioner's victims and thereby spare the boys and their families publicity and embarrassment, and to compel petitioner to get professional help for his problem. P.Exs. 45, 46; Burgess testimony, Tr. pp. 21, 41–42; Caldwell testimony, Tr. pp. 64, 68; Stroud testimony, Tr. pp. 68–90, 95–96.

11. In seeking these terms, petitioner also hoped to spare the involved young men publicity and embarrassment. Stroud testimony, Tr. p. 88. Petitioner also sought to resolve all charges in one indictment. R.Ex. 1; Burgess testimony, Tr. pp. 21, 24; Caldwell testimony, Tr. pp. 64–65.

D. *Stroud fully performed his part of the plea agreement by seeking, obtaining, and prosecuting an indictment which charged petitioner with a single count of taking indecent liberties with an unnamed minor.*

12. On November 6, 1978, Stroud sought and obtained from the grand jury an indictment which charged petitioner with a single count of taking indecent liberties with an unnamed minor. P.Exs. 1, 46; Stroud testimony, Tr. p. 91.

13. In November 1978, Stroud secured the appointment of Jesse Caldwell, an attorney in the public defender's office, to represent petitioner. Caldwell testimony, Tr. pp. 60–61; P.Ex. 46.

14. On numerous occasions between November 6, 1978 and mid-January 1979, Stroud discussed with petitioner and Caldwell the indictment brought by the grand jury. Stroud informed petitioner and Caldwell that he considered the indictment to be defective because it did not mention the name of any victim. All were aware of the defect in the indictment, and all presumed that the defect would be cured if petitioner waived the defect and pleaded guilty to the indictment. R.Ex. 1; Burgess testimony, Tr. pp. 23–24; Stroud testimony, Tr. pp. 96–97, 121.

15. In January 1979, Stroud brought petitioner's case in Gaston County superior court before Judge Robert M. Burroughs. Stroud explained to Judge Burroughs the charge against the petitioner and the facts underlying the charge. P.Ex. 46; Stroud testimony, Tr. pp. 92, 122–124; Caldwell testimony, Tr. p. 78. Judge Burroughs accepted petitioner's guilty plea. P.Ex. 6.

E. *Burgess fully performed his part of the plea agreement by attending counseling, by waiving the defect in the indictment, by pleading guilty, and by going to court many times over a period of seven or eight months to be sentenced.*

16. Immediately after his first meeting with Stroud, petitioner began attending counseling sessions for treatment of his problem. P.Exs. 45, 46; R.Ex. 1. Petitioner regularly attended counseling at Gaston-Lincoln Mental Health Center once or twice weekly from his first session until mid-January, 1979. Burgess testimony, Tr. pp. 27–28; Caldwell testimony, Tr. p. 68.

17. In January 1979, petitioner went to Gaston County superior court to plead to

the charge against him. Also present in the courtroom were assistant district attorney Jay Stroud, Caldwell, and the presiding judge, Robert M. Burroughs. *See* citations supporting finding of fact number 15.

18. Judge Burroughs noticed the defect in the indictment, and he questioned petitioner, Caldwell and Stroud about it. Petitioner then waived the defect in the indictment. Burgess testimony, Tr. pp. 23, 44; Caldwell testimony, Tr. p. 65; R.Exs. 1, 13; P.Ex. 45.

19. After further questioning by Judge Burroughs, petitioner pleaded guilty to the charge against him. Burgess testimony, Tr. pp. 24, 44; Caldwell testimony, Tr. pp. 65–66; Stroud testimony, Tr. pp. 92, 122–124; P.Ex. 6.

20. Petitioner was fully aware of the defect in the indictment when he pleaded guilty to the charge. R.Ex. 2; Burgess testimony, Tr. pp. 23–24; Caldwell testimony, Tr. 65; Stroud testimony, Tr. pp. 96–97, 121. Petitioner purposefully waived the defect and pleaded guilty in order to consummate the plea agreement and thereby resolve all possible charges of taking indecent liberties with minors which could be brought for actions before September 20, 1978. Burgess testimony, Tr. pp. 22–24; Caldwell testimony, Tr. p. 65; Stroud testimony, Tr. pp. 96–97, 121; R.Ex. 1. Although the parties may not have ever used the word "waive" in describing the effect of petitioner's plea, each person contemplated that a guilty plea to the defective indictment would "cure" the defect. When petitioner expressly waived the indictment after Judge Burroughs provided the opportunity, petitioner acted in exactly the way everyone involved had expected and desired.

F. *The court accepted Burgess's guilty plea, but repeatedly failed to sentence him.*

21. Stroud explained to Judge Burroughs that petitioner had committed numerous acts similar to the act charged in the indictment, but that the state intended to bring only one charge. See citations at finding of fact number 15.

22. After questioning the petitioner, Judge Burroughs accepted petitioner's guilty plea. Burgess testimony, Tr. pp. 24, 44; Caldwell testimony, Tr. pp. 65–66; Stroud testimony, Tr. pp. 92, 122–124; P.Ex. 6.

23. During the judicial proceeding in January 1979, Judge Burroughs conferred with Stroud and Caldwell in his chambers. Judge Burroughs expressed concern about the case and advised counsel that he needed more information before sentencing petitioner. Caldwell testimony, Tr. p. 66; R.Ex. 13.

24. Judge Burroughs declined to sentence petitioner on January 15, 1979, and continued the matter to a later date in January. *See* citations supporting finding of fact number 15.

25. Between early January and September 3, 1979, petitioner was required to come to court between six and twelve times for sentencing. Each time, petitioner appeared in court; but each time, the court failed to sentence petitioner. Burgess testimony, Tr. pp. 26, 124–125; Caldwell testimony, Tr. p. 66; Stroud testimony, Tr. pp. 93, 124–125; R.Exs. 1, 13.

26. Between the time of his guilty plea in January 1979 and August 25, 1979, petitioner continued to attend counseling. R.Ex. 1; Burgess testimony, Tr. p. 28; Stroud testimony, Tr. p. 95.

G. *Nearly eight months after his guilty plea was accepted by the court, petitioner for the first time on September 4, 1979, failed to appear for a sentencing hearing.*

27. On August 25, 1979, petitioner moved to South Carolina. R.Ex. 1.

28. On September 4, 1979, petitioner failed to appear in court for sentencing, and an order for arrest was issued by Judge Robert Gaines. Stroud testimony, Tr. p. 93; P.Ex. 10.

29. In December 1979, petitioner was arrested in South Carolina and, after waiving extradition, was returned to Gaston County. R.Ex. 1; P.Ex. 46; Stroud testimony, Tr. 94.

H. *The district attorney then brought twenty-seven charges based on alleged crimes by petitioner which occurred before September 1978.*

30. On January 7, 1980, Stroud sought and obtained 27 indictments from the grand jury which charged petitioner with 27 counts of taking indecent liberties with minors. The indictments concerned crimes allegedly committed before September 1978. P.Exs. 15–41; Stroud testimony, Tr. pp. 126–131.

31. Stroud stated at the hearing that the additional charges were brought because (a) Stroud concluded that petitioner had broken the plea agreement, and (b) Stroud suspected that petitioner had committed additional crimes. Stroud testimony, Tr. pp. 95–96.

32. The 27 indictments in January 1980 charged petitioner with crimes which were covered under the terms of the 1978 plea agreement between petitioner and the state. P.Exs. 15–41.

I. *Burgess then, in response to the new charges, pleaded guilty to the same crimes for which he had already been convicted when his counsel, without researching the issue of double jeopardy, advised him to do so.*

33. In December 1979, petitioner hired Senator Frank P. Cooke, an experienced criminal lawyer, to represent him. P.Ex. 48.

34. Cooke discussed the case with petitioner, Stroud, and Caldwell. He examined the police files and the public defender files. Cooke knew of the earlier guilty plea and of the defect in the first indictment. P.Ex. 48; Cooke testimony, Tr. pp. 136–138, 140.

35. The public defender file contained a memorandum from Caldwell which mentioned a possible double jeopardy defense. Caldwell testimony, Tr. p. 71; R.Ex. 13.

36. Cooke concluded that, if there was a plea agreement, petitioner had violated the plea agreement by moving elsewhere and by discontinuing treatment. Cooke testimony, Tr. pp. 145, 149.

37. Cooke did not research the double jeopardy question. Cooke testimony, Tr. p. 166. Nor did Cooke attempt to get a transcript of the January, 1979, hearing before Judge Burroughs. Cooke testimony, Tr. p. 159. It was Cooke's opinion that jeopardy did not attach when petitioner first pleaded guilty. Cooke testimony, Tr. p. 166.

38. Cooke then negotiated with Assistant District Attorney Hill to have the state dismiss fourteen counts in exchange for petitioner's guilty plea to thirteen counts. Cooke advised petitioner to plead guilty to thirteen counts. R.Ex. 1; P.Ex. 48; Burgess testimony, Tr. p. 33; Cooke testimony, Tr. pp. 146–148.

J. *Although petitioner had already been convicted, and had repeatedly but fruitlessly attended court for sentencing, Judge Frank W. Snepp, Jr., at trial in April 1980, ordered petitioner's first guilty plea stricken, and sentenced petitioner to two consecutive ten-year prison terms on thirteen counts.*

39. On April 9, 1980, petitioner, on advice of counsel, pleaded guilty to thirteen counts of taking indecent liberties with minors for acts done prior to September 20, 1978. P.Ex. 42; Cooke testimony, Tr. p. 148.

40. On April 10, 1980, Judge Snepp found that "the [November 6, 1978] Bill of Indictment is fatally defective in that no name of the victim is alleged. The plea of guilty is stricken and the Court on its own motion dismisses this indictment." P.Ex. 14.

41. On April 18, 1980, Judge Snepp sentenced petitioner to serve two consecutive ten year terms in prison. P.Exs. 43, 44.

## II. CONCLUSIONS OF LAW

A. *Burgess successfully waived the defective indictment when he pleaded guilty with the intention of resolving all possible charges against him for sexual acts with minors occurring before September 20, 1978.*

1. State law provides that the requirement of an indictment may be waived *en-*

*tirely* if it is done so in writing with the assistance of defense counsel. N.C.G.S. § 15A–642(c).

▮ In other words, an indictment is not necessary in order to obtain a valid conviction of one suspected of a crime. The general rule is that an indictment is necessary, but when certain other indicia are present, the purpose of an indictment is accomplished and the existence of a formal indictment is not necessary. This is because the purpose of a valid indictment is *to protect the accused. See, e.g., State v. Lowe,* 295 N.C. 596, 247 S.E.2d 878 (1978); *State v. Beach,* 283 N.C. 261, 196 S.E.2d 214 (1973); *State v. Sparrow,* 276 N.C. 499, 173 S.E.2d 897 (1970); *State v. Reavis,* 19 N.C.App. 497, 199 S.E.2d 139 (1973). A proper indictment (i) provides certainty in the statement of accusation and identifies the specific offense; (ii) protects the accused from double jeopardy; (iii) enables the accused to prepare for trial; and (iv) enables the court to pronounce sentence according to the elements of the case. *Lowe, supra; Beach, supra; Sparrow, supra; Reavis, supra.*

▮ Thus the statute, N.C.G.S. § 15A–642(c), allows an accused to waive the requirement of an indictment *entirely* if the accused follows the statutory procedure which insures that he is provided with the information that an indictment would otherwise supply.

▮ 2. Similarly, a defendant may waive a defect *within* an indictment if he does so expressly and intelligently. For example, numerous North Carolina courts have held that an indictment defective for duplicity (charging numerous offenses in a single count) may be waived by a plea of guilty. *State v. Merritt,* 244 N.C. 687, 94 S.E.2d 825 (1956); *State v. Kelly,* 13 N.C. App. 588, 186 S.E.2d 631 (1972), *rev'd on other grounds,* 281 N.C. 618, 189 S.E.2d 163; *State v. Turner,* 8 N.C.App. 541, 174 S.E.2d 863 (1970). *See also State v. Best,* 265 N.C. 477, 144 S.E.2d 416 (1965); *State v. Williamson,* 250 N.C. 204, 108 S.E.2d 443 (1959); *State v. Beaver,* 14 N.C.App. 459, 188 S.E.2d 576 (1972). Furthermore, the North Carolina Supreme Court in *State v. Stokes,* 274 N.C. 409, 163 S.E.2d 770 (1968), reversed the conviction of one who had been found guilty on the basis of an indictment which was defective in that it failed to name the victim of the crime. In reversing, the court stated that

[t]here is nothing in the record before us to indicate that defendant has waived his fundamental constitutional right to challenge the legal sufficiency of the indictment.

*Id.* at 773. This suggestion that an express and intelligent waiver would have cured the defective indictment is buttressed by later language in the opinion which states that the defect was offensive in that it failed to provide adequate protection to the accused.

[I]t is necessary to the legal sufficiency of an indictment charging the commission of a crime against nature to state with exactitude, *inter alia,* the name of the person with or against whom the offense was committed, *in order that there can be certitude in the statement of the accusation as will identify the offense with which the accused is sought to be charged and to protect the accused from being twice put in jeopardy for the same offense.*

*Id.* at 774. (Emphasis added.) Therefore, under North Carolina law, an accused may waive a defect within an indictment if the facts of the case unmistakably indicate that the purpose of the indictment to protect the accused has been accomplished, and that the accused expressly and intelligently waived the defect.

▮ 3. Petitioner clearly waived the indictment in this case. Petitioner and his counsel knew of the defect in the indictment almost from the moment it was returned by the grand jury. For the next two months, assistant District Attorney Stroud repeatedly discussed the defect with petitioner and his counsel, in order that petitioner be aware of the defect and of the necessity for petitioner to waive the defect before being convicted. The record clearly

shows that petitioner was fully aware that the charge brought against him encompassed all sexual acts with young boys which occurred before September 20, 1978. Petitioner knew that a waiver of the defect was necessary in order to resolve fully all charges against him in a single count, and he eagerly anticipated the time in January 1979, by which time Stroud assured him all would be resolved. At trial in January 1979, all parties present, including Judge Burroughs, were aware that the indictment encompassed multiple crimes, and they all discussed that fact. There was some evidence that petitioner did not make "an understanding and intelligent and knowing waiver" (R.Ex. 13), but the overwhelming weight of the evidence is to the contrary. Thus, although a guilty plea, standing alone, does not waive a defect in an indictment, the facts of this case unmistakably indicate that the purpose of the indictment to protect the petitioner had been accomplished, and that the petitioner expressly and intelligently waived the defect at trial in January 1979.

B. *The plea agreement was consummated at the trial on January 15, 1979 when the state pursued a single charge and the petitioner pleaded guilty to the charge.*

■■■ 4. When the content of a plea bargain and its effect are at issue, courts will apply traditional principles of contract law. *United States v. McIntosh,* 612 F.2d 835 (4th Cir.1979). Application of fundamental principles of contract to this case shows that the plea agreement was consummated at petitioner's trial in January 1979 because both parties had fully performed their obligations under the contract. Petitioner had attended counseling regularly, had gone to court and pleaded guilty, had waived a defect in the indictment, and had pleaded guilty to a single count of taking indecent liberties with an unnamed minor. Stroud had sought and obtained an indictment which charged petitioner with a single count of taking indecent liberties with an unnamed minor, and had pursued only that single count. All

parties understood that the indictment covered all criminal acts committed by petitioner prior to September 1978. Neither party anticipated that the court would fail to sentence petitioner on that date, and the agreement imposed no obligations on either party after petitioner pleaded guilty.

■■■ 5. There is some dispute whether Stroud promised petitioner that he would receive a particular sentence. Even if Stroud did make such a promise, he had no authority to bind the court, and such alleged promise will be given no effect by this court. Furthermore, where the prosecution promises to recommend a sentence and does so, but the court rejects it, defendant's constitutional rights are not violated. *United States v. Futeral,* 539 F.2d 329 (4th Cir.1975).

C. *Jeopardy attached when Burgess pleaded guilty and the court accepted the plea in January 1979.*

■■■ 6. "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). Jeopardy therefore attached when petitioner's guilty plea was accepted by the court in January 1979. The attachment of jeopardy when the court accepted the plea has a legal effect on this case *independent* of the plea agreement, and any later status of the agreement cannot purge this legal effect. Thus, any alleged breach of the plea agreement by either side had no effect on petitioner's conviction of the crimes covered by the indictment.

D. *The State violated petitioner's Fifth Amendment right against being twice put in jeopardy for the same offense when the State brought further indictments and prosecuted Burgess for acts occurring prior to September 20, 1978.*

■■■ 7. The double jeopardy provision of the Fifth Amendment, enforceable

against the states by the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), protects against a second prosecution for the same offense after conviction. *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

 8. The State violated petitioner's Fifth Amendment right against being twice put in jeopardy for the same offense when the State brought further indictments and prosecuted petitioner for the same acts for which petitioner had been convicted in January 1979.

E. *The state was not justified in prosecuting petitioner a second time for the same acts. The agreement was already consummated by both parties. After the court accepted the guilty plea and thereby convicted the petitioner, the state had no power or authority to prosecute petitioner a second time.*

 9. The State has argued that it was justified by "extenuating circumstances" in prosecuting petitioner under the later indictments. The case law cited in support of that view is not applicable to this case for two reasons. First, unlike the agreements in the cases cited by respondent, the plea agreement in this case has been consummated. Second, petitioner in this case was *already convicted* of the crimes with which he was again charged a year later. None of the cases cited by respondent hold that "extenuating circumstances" allow multiple convictions for the same crimes. Once a person is convicted of a crime or crimes, the state may not prosecute for those crimes a second time just because that person commits further crimes. The state's remedy is to prosecute for the *later* crimes.

F. *Burgess did not waive his right against being twice convicted of the same crimes when he pleaded guilty to additional charges in April 1980.*

 10. A voluntary guilty plea normally forecloses any attack based on prior non-jurisdictional errors. *Tollett v.*

*Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *Hall v. McKenzie,* 575 F.2d 481 (4th Cir.1978). A guilty plea does *not,* however, waive a double jeopardy claim. *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975); *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). *But see Brown v. Maryland,* 618 F.2d 1057 (4th Cir.1980), *cert. den.* 449 U.S. 878, 101 S.Ct. 224, 66 L.Ed.2d 100. The Supreme Court has been unequivocal in its holdings that a guilty plea does not waive the right not to be placed in double jeopardy. Petitioner did not waive that right by pleading guilty a second time to the same crimes for which he had already been convicted.

G. *Petitioner received ineffective assistance from counsel when he was advised to plead guilty to the same crimes for which he had already been convicted, and, therefore, petitioner did not voluntarily and intelligently plead guilty in April 1980.*

 11. Misleading advice through failure to research the law after notice of possible defense amounts to ineffective assistance of counsel. *Strader v. Garrison,* 611 F.2d 61 (4th Cir.1979). Petitioner's counsel at his second trial had notice of a very strong double jeopardy defense as early as four months before trial. Nevertheless, he dismissed the defense without even the most elementary research on the issue. Counsel knew that petitioner had been convicted of the crimes for which he was again charged in 1980. Counsel also knew that, but for the double jeopardy defense, petitioner was in danger of being sentenced to prison for up to 270 years, rather than for a maximum of 10 years on the first conviction. Although counsel was otherwise very able, he was ineffective in this very important respect. Counsel's advice that petitioner again plead guilty, though psychologically understandable, was erroneous and was not within the range of competence required of attorneys in criminal cases.

12. Therefore, petitioner did not voluntarily and intelligently plead guilty in April 1980, and both the plea and conviction are invalid. Consequently, even if a guilty plea waives a double jeopardy claim, *see Brown v. Maryland,* 618 F.2d 1057 (4th Cir.1980), such a waiver did not occur in this case.

### III. CONCLUSION

Petitioner clearly is a very disturbed man who desperately needs professional help. Assistant District Attorney Stroud is to be commended for the attention and concern which he displayed, at least until January 1980, for petitioner and the children involved in this case. Petitioner's constitutional rights, however, have been trampled, and this constitutional wrong, left unremedied, has especially unsalutary institutional consequences. This court, therefore, like the state courts, has a duty to remedy the wrong. The court sincerely hopes that the personnel in the District Attorney's office will again display the same good sense and concern they showed in 1978 and 1979, and, when again dealing with this case, will endeavor to acquire effective professional help for this petitioner.

Based on the foregoing and on all the evidence, pleadings and briefs in the record, the court finds that petitioner was unconstitutionally convicted twice for the same crimes.

IT IS THEREFORE ORDERED:

1. That petitioner's claim for relief based on his claim that he was twice convicted for the same offenses is GRANTED.

2. That petitioner's claim for relief from his sentences is ALLOWED, and the sentences are set aside.

3. That petitioner, within thirty (30) days from the entry of this order, be released, or be sentenced on the basis of his January 1979 conviction and plea agreement. Petitioner shall be credited with all time already served.