BEASLEY, Chief Justice.
**249 The sole question presented by this appeal is whether the superseding indictment upon which defendant was tried and convicted was facially defective, and thus failed to establish jurisdiction in the trial court, because it identified the alleged victim only as "Victim #1." For the reasons stated below, we hold that an indictment identifying the alleged victim only as "Victim #1" fails to satisfy the statutory requirement that the indictment name the victim; and, therefore, the indictment is facially invalid. As a result, the trial court's judgment must be vacated.
Background
Beginning in December 2010, the victim, Hannah,[1] lived with her mother and defendant in defendant's trailer for a brief time when she was around seven years old. Hannah reported to her aunt in 2013 that defendant had molested her during her stay at the trailer. Defendant confessed in writing to sexually assaulting Hannah after Hannah's aunt reported the incident to the police. On 1 May 2013, an arrest warrant was issued, alleging probable cause to believe that defendant "unlawfully, willfully and feloniously did engage in a sex offense with [Hannah], a child under the age of 13 years." On the same day, defendant was arrested and charged with one count of first-degree sex offense with a child in violation of N.C.G.S. § 14-27.4A(1) (recodified as N.C.G.S. § 14-27.28(a) (2015) ). A grand jury returned a true bill of indictment on this charge on 8 July 2013. On 18 May 2015, the grand jury returned a superseding indictment, which charged defendant with one count of sexual offense with a child by an adult, stating that he "engage[d] in a sexual act with Victim #1, a child who was under the age of 13 years, namely 7 years old," and added a new count of indecent liberties with a child, alleging that "[t]he name of the child is Victim #1." Both the arrest warrant and the original indictment identified Hannah by her full name.
**250 The case was tried at the 31 August 2015 session of Superior Court, Graham County, with the Honorable J. Thomas Davis presiding. On 9 September 2015, the jury returned a verdict finding defendant guilty of sexual offense with a child by an adult offender. The trial court imposed an active sentence of 300 to 369 months of imprisonment. On 17 October 2017, the Court of Appeals affirmed defendant's conviction in an unpublished opinion, State v. White , --- N.C. App. ----, 805 S.E.2d 563, 2017 WL 4638188 (2017) (unpublished). Defendant petitioned this Court for review, arguing that the Court of Appeals erred by holding that an indictment that failed to identify the alleged victim was not facially invalid.
Before the Court of Appeals, defendant argued that the superseding indictment upon which he was convicted was invalid because it identified the victim as "Victim #1" rather than naming the victim as the short-form indictment statute for the offense directs. White , 2017 WL 4638188, at * 2. The Court of Appeals held that the indictment was valid because the identity of the victim could be ascertained by reference to other documents in the record. Id. at *3 (relying on State v. McKoy , 196 N.C. App. 650, 657-58, 675 S.E.2d 406, 412, appeal dismissed and disc. rev. denied , 363 N.C. 586, 683 S.E. 2d 215 (2009) ).
*82 Analysis
"A defendant can challenge the facial validity of an indictment at any time, and a conviction based on an invalid indictment must be vacated." State v. Campbell, 368 N.C. 83, 86, 772 S.E.2d 440, 443 (2015) (citing McClure v. State , 267 N.C. 212, 215, 148 S.E.2d 15, 17-18 (1966) ). The sufficiency of an indictment is a question of law reviewed de novo. See, e.g., State v. Sturdivant , 304 N.C. 293, 307-11, 283 S.E.2d 719, 729-31 (1981).
"[A] valid bill of indictment is essential to the jurisdiction of the trial court to try an accused for a felony." State v. Rankin , 371 N.C. 885, 886, 821 S.E.2d 787, 790 (2018) (alteration in original) (quoting Campbell , 368 N.C. at 86, 772 S.E.2d at 443 ). Generally, an indictment "is fatally defective if it 'fails to state some essential and necessary element of the offense of which the defendant is found guilty.' " State v. Ellis , 368 N.C. 342, 344, 776 S.E.2d 675, 677 (2015) (quoting State v. Gregory , 223 N.C. 415, 418, 27 S.E.2d 140, 142 (1943) ). While "it is not the function of an indictment to bind the hands of the State with technical rules of pleading," State v. Williams , 368 N.C. 620, 623, 781 S.E.2d 268, 270-71 (2016) (quoting Sturdivant , 304 N.C. at 311, 283 S.E.2d at 731 ), the indictment must fulfill its constitutional purposes-to "identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from **251 being jeopardized by the State more than once for the same crime," Sturdivant, 304 N.C. at 311, 283 S.E.2d at 731 (citing Gregory , 223 N.C. 415, 27 S.E.2d 140 ).
The General Assembly has the power "to relieve the State of the common law requirement that every element of the offense be alleged" in an indictment, State v. Lowe , 295 N.C. 596, 603, 247 S.E.2d 878, 883 (1978), "provided the form established is sufficient to apprise the defendant with reasonable certainty of the nature of the crime of which he stands charged." Id. at 603, 247 S.E. 2d at 883 (quoting State v. Harris , 145 N.C. 456, 457-58, 59 S.E. 115, 116 (1907) ). In particular, this Court has held that statutes authorizing short form indictments for rape and first-degree sexual offense "comport with the requirements of the North Carolina and United States Constitutions," even though they do not require each essential element of the offense to be alleged. State v. Wallace , 351 N.C. 481, 505, 528 S.E.2d 326, 342, cert. denied , 531 U.S. 1018, 121 S. Ct. 581, 148 L.Ed. 2d 498 (2000). Furthermore, courts do not favor quashing an indictment. See, e.g. , State v. Greer , 238 N.C. 325, 327, 77 S.E.2d 917, 919 (1953).
Use of the Phrase "Victim #1" Does Not Constitute "Naming the Victim."
"The goal of statutory interpretation is to determine the meaning that the legislature intended upon the statute's enactment." Rankin , 371 N.C. at 889, 821 S.E.2d at 792 (citing State v. Beck , 359 N.C. 611, 614, 614 S.E.2d 274, 276-77 (2005) ). "Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning." Burgess v. Your House of Raleigh, Inc ., 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990) (citing State ex rel. Utils. Comm'n v. Edmisten , 291 N.C. 451, 232 S.E.2d 184 (1977) ).
Subsection 15-144.2(b) of the North Carolina General Statutes states:
If the victim is a person under the age of 13 years, it is sufficient to allege that the defendant unlawfully, willfully, and feloniously did engage in a sex offense with a child under the age of 13 years, naming the child , and concluding as required by law. Any bill of indictment containing the averments and allegations named in this section is good and sufficient in law as an indictment for a sex offense against a child under the age of 13 years and all lesser included offenses.
**252 N.C.G.S. § 15-144.2(b) (Supp. 2018) (emphasis added). The statutory language is clear and unambiguous: it requires that the child be named as part of the allegations in the indictment. In common understanding, to name someone is to identify that person in a way that is unique to that individual and enables others to distinguish between the named person and all other people. The *83 phrase "Victim #1" does not distinguish this victim from other children or victims.
In holding that "naming the victim" could be satisfied by use of "Victim #1," the Court of Appeals relied on State v. McKoy . There the court evaluated the sufficiency of a short-form indictment for second-degree rape, which identified the victim by the initials "RTB." McKoy , 196 N.C. App. at 654, 675 S.E.2d at 410. The relevant statutes required that the short-form indictment "nam[e] the victim." Id. at 655, 675 S.E.2d at 410 (quoting N.C.G.S. §§ 15-144.1(a), -144.2(a) (2007)). The court acknowledged that no North Carolina court had interpreted "whether 'naming' the victim [could] only be satisfied by using the victim's full name, or whether a nickname, initials or other identification method would be sufficient." Id. at 657, 675 S.E.2d at 411. The court held that, when use of the victim's initials was adequate to provide notice of the victim's identity and protect the defendant from double jeopardy, the indictment was sufficient. Id. at 657-58, 675 S.E.2d at 411-12 (first citing State v. Coker , 312 N.C. 432, 435, 323 S.E.2d 343, 346 (1984) ; and then citing Lowe , 295 N.C. at 603, 247 S.E.2d at 883 ). Even if this Court decides that initials are sufficient to satisfy the "naming the victim" requirement, the indictment in this case is still insufficient. The State concedes that its intent was to conceal the identity of the child-an intent at odds with the purpose of the naming requirement: to provide notice of the essential elements of the crime charged to the accused. Thus, use of the phrase "Victim #1" does not constitute "naming the child."
The State points to the North Carolina Rules of Appellate Procedure and various provisions in the North Carolina General Statutes regarding juvenile offenders as evidence of a preference for protecting the privacy of minors. These comparisons are inapt.
It is true that this Court has created rules for the protection of juvenile victims' identities in documents filed in the Appellate Division. See, e.g. , N.C. R. App. P. 42(b), https://www.nccourts.gov/assets/inline-files/North-Carolina-Rules-of-Appellate-Procedure-Codified-7-January-2019.pdf?U4QsCKDrkl0LSp9BdSHmngXdzgDylUGf (mandating that, in appeals from juvenile proceedings, counsel must use "initials or a pseudonym instead of the minor's name" in briefs, motions, and petitions filed in certain matters, including appeals "that involve a sexual offense committed **253 against a minor"). This Court has the authority to promulgate rules for the appellate courts. It does not, however, have the authority to rewrite statutes to implement its own policy preferences.
Additionally, the State cites statutes enacted to keep juveniles' records confidential. See N.C.G.S. § 7B-2901 (2017) (governing the maintenance under seal of records pertaining to reports of juvenile abuse, neglect, and dependency); id. § 7B-3000 (2017) (governing confidentiality of records of the juvenile courts); id. § 7B-3001 (2017) (requiring that all court records pertaining to juvenile offenders "be withheld from public inspection"); id. § 7B-3100 (2017) (prohibiting the disclosure of information "that would reveal the identity of [any juvenile under investigation]"). These statutes all govern the keeping of records of allegedly abused, neglected, dependent, or delinquent juveniles rather than records in adult criminal cases. The existence of these particular statutes does not negate the requirements of N.C.G.S § 15-144.2(b).
Adopting the State's interpretation that "Victim #1" is sufficient to name the victim would frustrate the purpose of the statute and render useless the phrase "naming the victim." See Porsh Builders, Inc. v. City of Winston-Salem , 302 N.C. 550, 556, 276 S.E.2d 443, 447 (1981) ("[A] statute must be considered as a whole and construed, if possible, so that none of its provisions shall be rendered useless or redundant. It is presumed that the legislature intended each portion to be given full effect and did not intend any provision to be mere surplusage."). If we were to adopt this proposed interpretation, the State would be permitted to prosecute defendants using indictments that ignore plainly stated statutory pleading requirements.
Facial Validity is Determined by Evaluating Only the Allegations in the Criminal Pleading.
We turn now to the question of whether a court may supplement the allegations in an *84 indictment by referring to extrinsic evidence. The Court of Appeals relied upon our opinion in State v. Ellis to conclude that reference to various record documents and trial evidence to supplement a missing material allegation in an indictment is permissible.
In Ellis the defendant was convicted upon an indictment charging injury to personal property after, in the course of committing larceny at an electrical substation on the campus of North Carolina State University (NCSU), he damaged copper wire located on the property. Ellis , 368 N.C. at 342-43, 776 S.E.2d at 676. The defendant appealed his conviction, arguing the indictment was fatally defective for failing to allege that NCSU and NCSU High Voltage Distribution were legal entities capable **254 of owning property. Id. at 343-44, 776 S.E.2d at 677. This Court observed that, because NCSU was authorized by N.C.G.S. § 116-3 to own property, the indictment need not repeat that the entity was so empowered. Id. at 345, 776 S.E.2d at 678 (citing Campbell , 368 N.C. at 87, 772 S.E.2d at 444 (holding that "alleging ownership of property in an entity identified as a church or other place of religious worship ... signifies an entity capable of owning property")).
The Court of Appeals in the instant case relied on Ellis for the proposition that a court may look outside the four corners of the indictment for information that can be used to supplement the missing essential element in the indictment. White , 2017 WL 4638188, at *4-5 (citing Ellis , 368 N.C. at 345, 776 S.E.2d at 678 ). According to this Court, NCSU's ability to own property is an inherent power of the University, not a separate element that must be alleged. See Ellis , 368 N.C. at 345, 776 S.E.2d at 678. Therefore, the State adequately alleged that the damaged property in Ellis was owned "by another" when it alleged simply that the property was owned by NCSU. See id. at 345, 776 S.E.2d at 678.
This Court made clear in Ellis that facial validity "should be judged based solely upon the language of the criminal pleading in question without giving any consideration to the evidence that is ultimately offered in support of the accusation contained in that pleading." Id. at 347, 776 S.E.2d at 679. A court may not look to extrinsic evidence to supplement a missing or deficient allegation in an indictment. See, e.g. , State v. Brice , 370 N.C. 244, 250, 806 S.E.2d 32, 36-37 (2017) (opining that "under the traditional test utilized in evaluating the facial validity of a criminal pleading," a reading of the indictment only revealed that all essential elements of the crime of larceny were charged); State v. Loesch , 237 N.C. 611, 612, 75 S.E.2d 654, 655 (1953) (observing that an indictment for a statutory offense "must be framed upon the statute" and such compliance "must distinctly appear upon the face of the indictment itself"). Standing alone, the superseding indictment here fails to identify the victim because her identity cannot be ascertained without referring to defendant's confession, the arrest warrant, and the original indictment. Therefore, the indictment is facially invalid.
Here, the dissent agrees with the Court of Appeals' conclusion that the arrest warrant, original indictment, and proceedings at trial may be considered in evaluating whether a defendant had sufficient notice of the crime charged, with Ellis providing the legal authority for the consideration of these additional materials. The additional information upon which Ellis relies, which consists of the statutory provision setting out the inherent authority of NCSU to own property, is fundamentally **255 different than the additional case-specific factual material upon which the Court of Appeals and the dissent rely. Ultimately, Ellis stands for the proposition that one determines the facial validity of an indictment by examining the four corners of the charging instrument in light of the applicable law without making any reference to additional factual information contained elsewhere in the record like that upon which the Court of Appeals and our dissenting colleagues rely.
We recognize the compelling public policy concerns that motivate the State and our courts to protect victims' identities. Protecting a victim's identity from the public increases privacy and safety, and encourages overall reporting of sexual assaults. Public access to a victim's identity often leads to *85 inquiries and commentary from the community or media, compromising victim privacy. See Daniel M. Murdock, Comment, A Compelling State Interest: Constructing a Statutory Framework for Protecting the Identity of Rape Victims , 58 Ala. L. Rev. 1177, 1180 (2007). Furthermore, studies show that significantly more rape victims would come forward to report assaults if they could rely on the justice system to protect them from public scrutiny. See id. ("Throughout the nation, 'rape remains the most underreported crime within the criminal justice system.' " (quoting People v. Ramirez , 55 Cal. Ct. App. 47, 53, 64 Cal. Rptr. 2d 9, 13 (1997) ); see also Moira E. McDonough, Note, Internet Disclosures of a Rape Accuser's Identity (Focus on the Kobe Bryant Case) , 3 Va. Sports & Ent. L.J. 284, 293 (2004) ("The growing recognition of privacy rights in this country necessitates protecting rape victims' identities. Not only is a person's status as a victim within a zone of privacy, this protection will also help ensure victims' safety and alleviate the problems of underreporting.").
It is within the purview of the General Assembly to mandate that the victim's identifying information be redacted from documents generated in sexual assault prosecutions, a measure that many other states have taken.[2] Additionally, the State may move to seal indictments in **256 individual cases to protect victim information from public inspection. It is not, however, within this Court's authority to read these protections into a statute that does not provide them on its face.
Because the Court of Appeals erred when it held that "Victim #1" constituted "naming the victim" as contemplated by the short-form indictment statute, and because the court referred to and relied on record documents and trial evidence to supplement the faulty indictment, we reverse the decision below and remand this case to the Court of Appeals for further remand to the trial court with instructions to vacate the trial court's judgment.
REVERSED AND REMANDED.
Justice DAVIS did not participate in the consideration or decision of this case.

The victim will be referred to as Hannah, a pseudonym to protect the child's privacy.

See, e.g. , Mo. Rev. Stat. § 595.226(1) (2017) (stating that any information that could be used to identify or locate a victim of a sexual offense shall be redacted before any such record is publicly disclosed); N.J. Rev. Stat. § 2A:82-46 (2017) (stating that the name, address, and identity of any victim under the age of 18 at the time of the alleged sexual offense shall not appear on indictment or any other public record, and requiring that initials or a fictitious name be used instead; any document identifying a minor victim of an alleged sexual assault "shall be confidential and unavailable to the public"); Wash. Rev. Code § 10.97.130 (2018) (prohibiting public release of information identifying sexual assault victims under age eighteen, including name, address, location, photographs, and information about victim's relationship to the alleged perpetrator).