IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-204

No. COA20-256

Filed 4 May 2021

Montgomery County Nos. 18 CRS 050721; 19 CRS 1035

STATE OF NORTH CAROLINA

v.

JEFFERY LEE SECHREST, Defendant.

Appeal by Defendant from judgment entered 18 July 2019 by Judge Susan E. Bray in Montgomery County Superior Court. Heard in the Court of Appeals 20 October 2020.

*Attorney General Joshua H. Stein, by Assistant Attorney General Jason P. Caccamo, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Katy Dickinson-Schultz, for defendant-appellant.*

MURPHY, Judge.

¶ 1        The indecent liberties with a child indictment that used initials to name the child victim was not facially invalid. Additionally, the trial court did not commit plain error when it allowed witnesses to recount to the jury their conversations with the victim.

## BACKGROUND

¶ 2        On 27 May 2018, Defendant Jeffery Sechrest attended a cookout at his father's camper that his father's fiancée, Jeanne,[1] and her relative, Kate,[2] also attended. Defendant was 40 years old and Kate was 15 years old. After discussing her desire to ride a motorcycle, Kate went on a motorcycle ride with Defendant where they discussed topics such as relationships, drugs, alcohol and sex. Defendant asked Kate whether she was a virgin and about her favorite sexual positions. Defendant and Kate returned to Defendant's father's camper after approximately 30 minutes.

¶ 3        The following day, 28 May 2018, Jeanne and Kate returned to Defendant's father's camper. Defendant took Kate on another motorcycle ride. About fifteen or twenty minutes into the ride, it began to rain and Defendant suggested they stop at his house until the rain cleared up. Upon arrival, Defendant offered Kate a drink in a brown bottle that she believed to be alcohol. While showing Kate an album of half-naked women, Defendant smoked methamphetamine. He then played pornography for Kate on his television, but turned it off after she asked to watch the movie *Suicide Squad*. While Kate and Defendant were watching the movie, Defendant grabbed Kate and pressed his face against hers to kiss her. Kate pushed away Defendant and told him she was uncomfortable; however, Defendant continued to kiss her and pull

---

[1] Pseudonyms are used for all relevant persons throughout this opinion to protect the identity of the juvenile and for ease of reading.

[2] A pseudonym abbreviation will also be used for the juvenile's initials when referred to in the indictment.

her up on his lap. Despite multiple objections from Kate, Defendant proceeded to put his hands under her shirt and touch her breasts. During this encounter, Kate's phone received a text message, which she used as an opportunity to escape and told Defendant she was ready to go back to the camper. Defendant took Kate back to the camper where they ate pizza with Jeanne and Defendant's father.

¶ 4     Kate returned home later that evening and texted her uncle, Andrew, to explain what happened on 27 and 28 May 2018. Andrew expressed his concerns to Kate and suggested she speak to her school's guidance counselor. At the start of the school week, Kate spoke to her school's resource officer and guidance counselor regarding the actions of Defendant. Kate was then interviewed by Morgan Halkyer ("Halkyer"), a Randolph County Department of Social Services ("DSS") employee. This interview was recorded.

¶ 5     Defendant was indicted for indecent liberties with a child and the case came on for trial during the 15 July 2019 session of Montgomery County Superior Court. At trial, the jury heard from Matthew Shoffner ("Shoffner"), Defendant's probation officer. Schoffner testified Defendant denied any sexual contact, but stated "maybe things did go a little too far." Additionally, the text messages between Kate and Andrew were admitted into evidence and published for the jury as well as the recorded interview between Halkyer and Kate.

¶ 6      The jury found Defendant guilty of indecent liberties with a child.  He then pleaded guilty to attaining the status of habitual felon and was sentenced to 127 to 165 months.  Defendant timely appealed.

## ANALYSIS

¶ 7      Defendant argues the trial court lacked subject matter jurisdiction to enter judgment on the indecent liberties with a child conviction because the alleged victim was identified only be her initials in the indictment.  Defendant also argues the trial court committed plain error by allowing an expert witness's statements on a recording and a lay witness's text messages with Kate where the statements and text messages improperly vouched for Kate's credibility.

## A. Sufficiency of the Indictment

¶ 8      Defendant argues because the indecent liberties with a child indictment referenced the victim by only her initials and not her full name, it was fatally defective and the defect rendered the trial court without subject matter jurisdiction to enter judgment on the indecent liberties with a child conviction against Defendant.  "[W]e review the sufficiency of an indictment *de novo*."  *State v. McKoy*, 196 N.C. App. 650, 652, 675 S.E.2d 406, 409, *appeal dismissed and disc. rev. denied*, 363 N.C. 586, 683 S.E.2d 215 (2009).

¶ 9      We note Defendant failed to object to the sufficiency of the indictment in the trial court and only raises this argument on appeal.  Despite this, an argument that

the trial court lacked subject matter jurisdiction may be raised at any time after a verdict. *See State v. Harwood*, 243 N.C. App. 425, 427-28, 777 S.E.2d 116, 118 (2015) ("The issue of a court's jurisdiction over a matter may be raised at any time, even for the first time on appeal or by a court *sua sponte*."). Since indictments confer subject matter jurisdiction on the trial court, Defendant's argument may be raised for the first time on appeal. *See State v. Rogers*, 256 N.C. App. 328, 337, 808 S.E.2d 156, 162 (2017) ("In criminal cases, a valid indictment gives the trial court its subject matter jurisdiction over the case.").

¶ 10 Generally, "[a] criminal pleading, such as an [indictment], is fatally defective if it 'fails to state some essential and necessary element of the offense of which the defendant is found guilty.'" *State v. Ellis*, 368 N.C. 342, 344, 776 S.E.2d 675, 677 (2015) (quoting *State v. Gregory*, 223 N.C. 415, 418, 27 S.E.2d 140, 142 (1943)).

> [I]t is not the function of an indictment to bind the hands of the State with technical rules of pleading; rather, its purposes are to identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime.

*State v. Sturdivant*, 304 N.C. 293, 311, 283 S.E.2d 719, 731 (1981).

¶ 11 We have previously determined the use of initials to identify a victim is sufficient for a second-degree rape and second-degree sexual offense indictment. *See McKoy*, 196 N.C. App. at 654, 675 S.E.2d at 410. Defendant argues *McKoy* is no

longer binding after our Supreme Court's opinion in *State v. White.* 372 N.C. 248, 827 S.E.2d 80 (2019). Defendant asks us to extend the holding of *White* as it "undercuts the viability of *McKoy*" and essentially overturns our decision in *McKoy*. In *White*, our Supreme Court discussed *McKoy* in determining whether the phrase "Victim #1" was sufficient to name the victim in a sex offense indictment. *Id.* at 251-53, 827 S.E.2d at 82-83. Our Supreme Court concluded:

> Even if this Court decides that initials are sufficient to satisfy the "naming the victim" requirement, the indictment in this case is still insufficient. The State concedes that its intent was to conceal the identity of the child–an intent at odds with the purpose of the naming requirement: to provide notice of the essential elements of the crime charged to the accused. Thus, use of the phrase "Victim #1" does not constitute "naming the child."

*Id.* at 252, 827 S.E.2d at 83. Nowhere in *White* does our Supreme Court explicitly or implicitly overrule our decision in *McKoy*. Additionally, *White* does not address the issue of naming a victim solely by their initials since the indictment there referenced the victim as "Victim #1." *McKoy* remains our binding precedent and "the use of initials to identify a victim [] require[s] [us] to employ the *Coker* and *Lowe* tests to determine if [the] indictment [was] sufficient to impart subject matter jurisdiction." *McKoy,* 196 N.C. App. at 658, 675 S.E.2d at 412.

¶ 12    In order to determine if the lack of a victim's full name renders an indictment fatally defective, *Coker* requires us to inquire whether a person of common

understanding would know the intent of the indictments was to charge Defendant with indecent liberties with a child. *State v. Coker*, 312 N.C. 432, 435, 323 S.E.2d 343, 346 (1984). Additionally, *Lowe* requires us to inquire whether Defendant's constitutional rights to notice and freedom from double jeopardy were adequately protected by use of the victim's initials. *State v. Lowe*, 295 N.C. 596, 603, 247 S.E.2d 878, 883 (1978).

¶ 13    Defendant's indictment for indecent liberties with a child alleges:

> The jurors for the State upon their oath present that on or about the date(s) of the offense shown and in the county named above [Defendant] named above unlawfully, willfully and feloniously did commit and attempt to commit a lewd and lascivious act upon the body of [KA], who was under the age of 16 years at the time. At the time, [Defendant] was over 16 years of age and at least five years older than that child.

N.C.G.S. § 14-202.1 states:

> (a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:
>
> (1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with *any child of either sex under the age of 16 years* for the purpose of arousing or gratifying sexual desire; or
>
> (2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of *any child of either sex under the age of 16 years.*

N.C.G.S. § 14-202.1(a) (2019) (emphasis added). The indictment here tracked the statutory language of N.C.G.S. § 14-202.1. *Id.* While the statute defining taking indecent liberties with a child requires the offense to be with "any child of either sex under the age of 16 years," *id.*, the indictment charging this offense "does not need to state the victim's full name, nor [does it] need to add periods after each letter in initials in order to accomplish the common sense understanding that initials represent a person." *McKoy*, 196 N.C. App. at 654, 675 S.E.2d at 410. A person of common understanding would know the intent of the indictment is met here. The *Coker* prong of *McKoy* is satisfied.

¶ 14    Turning to the *Lowe* prong of the *McKoy* analysis, the Record demonstrates Defendant also had notice of the identity of the victim. The arrest warrants served on Defendant listed the victim's full name, including her middle name. *See McKoy*, 196 N.C. App. at 657-58, 675 S.E.2d at 412. Defendant was interviewed by multiple law enforcement officers regarding his contact with the victim, in which he admitted he knew Kate. *See id.* at 658, 675 S.E.2d at 412. Further, Defendant makes no argument on appeal he had difficulty preparing his case because of the use of "KA" instead of the victim's full name. *See id.* In addition, Kate testified at trial and identified herself by her full name in open court. *See id.* There is no possibility that Defendant was confused regarding the identity of the victim and therefore the use of

"KA" in the indictment provided Defendant with sufficient notice to prepare his defense and protect himself against double jeopardy.

¶ 15    The indictment charging Defendant with taking indecent liberties with a child was sufficient to meet the analysis emphasized by *McKoy* as outlined in *Coker* and *Lowe*.

## B. Vouching

¶ 16    Defendant argues the trial court plainly erred by admitting testimony and evidence that vouched for the credibility of the victim. Defendant did not object to the admission of this evidence throughout the trial, and we review for plain error. N.C. R. App. P. 10(a)(4) (2021); *State v. Odom*, 307 N.C. 655, 659-60, 300 S.E.2d 375, 378 (1983). The standard for plain error is well established:

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice--that, after examination of the entire record, *the error had a probable impact on the jury's finding that the defendant was guilty.* Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings[.]

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citations and marks omitted) (emphasis added).

¶ 17 "[T]he trial court commits a fundamental error when it allows testimony which vouches for the complainant's credibility in a case where the verdict entirely depends upon the jurors' comparative assessment of the complainant's and the defendant's credibility." *State v. Warden*, 376 N.C. 503, 504, 852 S.E.2d 184, 186 (2020). However, witnesses generally are permitted to explain their own observations of the alleged victim or evidence gathered in the case. *See State v. Wise*, 326 N.C. 421, 427-28, 390 S.E.2d 142, 146, *cert. denied*, 498 U.S. 853, 112 L. Ed. 2d 113 (1990) (holding no error where a witness merely described her personal observations concerning the emotions of the victim during their counseling sessions). Defendant argues both Halkyer and Andrew made statements that impermissibly vouched for Kate's credibility. We disagree and find no error in admitting Halkyer's statements and no plain error in admitting Andrew's statements.

**1. Expert Witness Opinion: Morgan Halkyer**

¶ 18 "In child sexual abuse cases, where there is no physical evidence of the abuse, an expert witness's affirmation of sexual abuse amounts to an evaluation of the veracity of the child witness and is, therefore, impermissible testimony." *State v. Crabtree*, 249 N.C. App. 395, 401, 790 S.E.2d 709, 714 (2016), *aff'd per curiam*, 370 N.C. 156, 804 S.E.2d 185 (2017); *see State v. O'Connor*, 150 N.C. App. 710, 712 & n.1, 564 S.E.2d 296, 297 & n.1 (finding plain error in the admission of an expert witness's written report stating the victim's disclosure was "credible" and noting "[t]here is no

reason to distinguish between an expert's opinion presented through oral testimony and an expert's opinion expressed in written form"), *disc. rev. denied*, 356 N.C. 173, 567 S.E.2d 144 (2002). "[A]n expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith." *State v. Stancil*, 355 N.C. 266, 267, 559 S.E.2d 788, 789 (2002) (per curiam). "[T]he same [rule] applies to a witness who is a DSS worker or child abuse investigator because, even if she is not qualified as an expert witness, the jury will most likely give her opinion more weight than a lay opinion." *Crabtree*, 249 N.C. App. at 402, 790 S.E.2d at 714-15.

¶ 19     During her recorded interview with Kate that was played for the jury, Halkyer made the following statements:

> You have like an entourage of people that kind of kicked in like that (*snaps fingers*) to make sure you are safe and healthy, like that's pretty cool. . . . No kid should ever be put in that situation by an adult, you know, they're an adult, they should know better . . . What do you think about that, all those people kind of kicking in gear?

Defendant argues these statements were impermissible vouching because they characterized Defendant as an adult that "should have known better" and a "sexually violent predator who should have known what he did was wrong."

¶ 20     We hold Halkyer did not impermissibly vouch for Kate's credibility. Halkyer's statements on the recording that "no kid should ever be put in that situation by an

adult" and "[adults] should know better" were not tantamount to an opinion that Kate was credible.

¶ 21     In *State v. Stancil*, our Supreme Court held:

> In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility. However, an expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith.

*Stancil*, 355 N.C. at 266-67, 559 S.E.2d at 789 (internal citations omitted). In *State v. Ryan*, we held the following testimony from a doctor improperly vouched for the credibility of the minor victim:

> [THE STATE:] Have you ever diagnosed or made a finding that a child is not being truthful?
>
> [DOCTOR:] I have done that on several occasions.
>
> [THE STATE:] Can you explain to the jurors what you look for, the clues that you look for, and do you do that in every case?
>
> [DOCTOR:] I do it in every case.
>
> [THE STATE:] Was there anything about your examination of the child that gave you any concerns in this regard?

> [DOCTOR:] That gave me concerns that she was giving a fictitious story?
>
> [THE STATE:] Yes.
>
> [DOCTOR:] Nothing. There was nothing about the evaluation which led me to have those concerns. And again, as I was getting into her history and considering this as a possibility, nothing came out.

*State v. Ryan*, 223 N.C. App. 325, 334, 734 S.E.2d 598, 604 (2012), *disc. rev. denied*, 366 N.C. 433, 736 S.E.2d 139 (2013). We concluded the doctor's testimony that she had no concerns the child was "giving a fictitious story" was "tantamount to her opinion that the child was not lying about the sexual abuse." *Id.*

¶ 22 Here, unlike in *Ryan*, Halkyer's statements on the recording did not impermissibly vouch for the credibility of Kate. The statements on the recording did nothing more than provide the jury with the context of Halkyer's interview with Kate. Halkyer was not attempting to give her opinion on whether Kate was lying about the sexual offense, but rather was comforting Kate with general statements about adult behavior while Kate reported a traumatic life event. Halkyer's statements on the recording are distinguishable from cases like *Ryan*, where we have held the witness was impermissibly vouching because Halkyer's statements on the recording are in no way tantamount to an opinion that the sexual offense had in fact occurred or that the child was not lying. The trial court did not err in allowing Halkyer's statements on the recording to be played to the jury.

**2. Lay Witness Opinion: Andrew**

¶ 23        Defendant's remaining argument contends the trial court plainly erred by admitting the text messages of a lay witness, Andrew.[3] Defendant specifically argues the admission of certain text messages between Andrew and Kate was plain error because Andrew's text messages "emphatically" stated Defendant committed a crime even if the conduct did not rise to the level of sexual assault.   Among the text messages shown to the jury were the following exchanges:

> [Andrew]:    Have you spoken to someone at school yet
>
> [Kate]:       No..
>
>              Well… I didn't give names or the whole story.. But I was talking to my PE teacher. Cause we are having Sex Ed week and asked about sexual assault and everything
>
> [Andrew]:    What did they say
>
> [Kate]:       It's not sexual assault because I didn't say no..
>
> [Andrew]:    Who said that?!?!
>
> [Kate]:       A teacher
>
> [Andrew]:    Did [the teacher] know he was 40?!?
>
> [Kate]:       No
>
>              I just said it in general
>
> [Andrew]:    You need to not speak in general darlin. You

---

[3] At trial, these documents were identified as text messages through the Facebook Messenger platform.

don't have to be explicit but they need to understand that a 40 year old man took you too [sic] his house and attempted inappropriate actions. It's may not be sexual assault but it is illegal

That's why I suggested a counselor because those should be protected conversations.

[Kate]: I'll go into her office after this class…I'll tell you what she says

Although if it isn't sexual assault what [is it]?

[Andrew]: It will turn into assault if you were to keep resisting. You're 15 and he is preying on you.

[frown emoji]

It is not your fault.

[Kate]: I didn't say no. I didn't refuse. I just let him do it.

[Andrew]: But did you want him to?

[Kate]: No

[Andrew]: Then you did say no and did refuse.

You shouldn't have to verbalize not wanting a 40 year old man to do something to you.

. . .

[Andrew]: How do you feel?

[Kate]: I'm okay…I keep reliving that moment and it disgusts me…I just wanna get past this…although it's crazy. Cause now I'm more sensitive when people come up to me…Like if

> they touch me all of the sudden…I jump…
>
> [Andrew]: Understandable but you can easily get past that. If it had continued, more [] damage would have been done physically and mentally. You are being extremely brave standing up to this.

The crux of Defendant's argument is that Andrew "essentially usurped the jury's duty to determine whether a crime happened by emphatically stating that one did" and the effect of these exchanges invited the jury to improperly conclude Defendant committed a crime.

¶ 24      "Our [caselaw] has long held that a witness may not vouch for the credibility of a victim." *State v. Giddens*, 199 N.C. App. 115, 121, 681 S.E.2d 504, 508 (2009), *aff'd per curiam*, 363 N.C. 826, 689 S.E.2d 858 (2010).  "The question of whether a witness is telling the truth is a question of credibility and is a matter for the jury alone."  *State v. Solomon*, 340 N.C. 212, 221, 456 S.E.2d 778, 784, *cert. denied*, 516 U.S. 996, 133 L. Ed. 2d 438 (1995).  As previously stated, to establish plain error, a defendant must show the error "was a fundamental error—that the error had a probable impact on the jury verdict."  *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334.  Here, Defendant cannot establish plain error because he has not demonstrated the above cited testimony and evidence had a "probable impact on the jury verdict."  *Id.* Prior to deliberations, the trial court read and provided the pattern cautionary

instruction to the jury regarding the credibility, interest, bias, and partiality of witnesses:

> You are the sole judges of the believability of witnesses. You must decide for yourselves whether to believe the testimony of any witness. You may believe all, any part, or none of a witness's testimony. In deciding whether to believe a witness, you should use the same tests for truthfulness that you use in your everyday lives. Among other things, these tests may include the opportunity of the witness to see, hear, know, or remember the facts or occurrences about which the witness testified; the manner and appearance of the witness; any interest, bias, prejudice, or partiality the witness may have; the apparent understanding and fairness of the witness; whether the testimony is reasonable and whether the testimony is consistent with other believable evidence in the case.

*See* N.C.P.I.—Crim. 101.13 (2019). The members of the jury were informed they could consider any potential interest or partiality Andrew may have had toward his niece. Likewise, the jury understood it could consider any negative bias Andrew may have harbored toward Defendant (a 40-year-old man who allegedly molested his niece). Given the jury's ultimate role regarding the believability of lay witnesses, and in light of the fact Kate provided extensive testimony at trial, along with Defendant's statement "maybe things did go a little too far[,]" we cannot say the admission of Andrew's text messages had a probable impact on the jury's verdict. The trial court did not plainly err in allowing Andrew's text messages.

¶ 25    Even if we assume there was error when the trial court did not intervene when Andrew's text messages with Kate were admitted into evidence, Defendant has not demonstrated plain error. Kate testified at length regarding Defendant's actions and provided details and descriptions. From this and the surrounding circumstances, the jury could have considered and weighed it in light of the otherwise admissible evidence presented. The jury had the opportunity to observe Kate's testimony and make its own independent determination about her credibility. Defendant has not demonstrated allowing Andrew's text messages had a probable impact on the jury's verdict. As a result, any error was not plain error.

## **CONCLUSION**

¶ 26    The indictment for taking indecent liberties with a child naming the victim only by her initials was sufficient under *McKoy*, which remains binding on our Court. Defendant has failed to demonstrate the trial court committed plain error in admitting an expert witness's statements on a recording from DSS employee Halkyer. Further, Defendant has failed to establish plain error in the trial court's admission of a lay witness opinion on text messages relating to the credibility of the minor victim.

NO ERROR IN PART; NO PLAIN ERROR IN PART.

Judges ZACHARY and COLLINS concur.