IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-618

Filed 20 August 2024

New Hanover County, No. 19 CRS 58493

STATE OF NORTH CAROLINA

v.

SHANITA YVETTE SIMPSON

Appeal by defendant from judgment entered 9 December 2022 by Judge Phyllis M. Gorham in New Hanover County Superior Court. Heard in the Court of Appeals 2 April 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General M. Denise Stanford, for the State.*

*Caryn Strickland for defendant-appellant.*

ZACHARY, Judge.

Defendant Shanita Yvette Simpson appeals from the judgment entered upon a jury's verdicts finding her guilty of felony forgery of endorsement and felony uttering a forged endorsement. After careful review, we conclude that Defendant received a fair trial, free from prejudicial error, but remand for correction of a clerical error.

## **BACKGROUND**

This case concerns financial crimes committed against Gorda Singletary. Mrs. Singletary's late husband, Dr. Henry Singletary, had dementia and, beginning around 2012, Mrs. Singletary hired SYNERGY HomeCare ("Synergy") to provide in-

home care for him, with various caretakers providing assistance. Synergy assigned Defendant to care for Dr. Singletary on 7 February 2019. After Defendant arrived that morning, Mrs. Singletary left the home to run errands and returned around noon, just before Defendant's shift ended.

The next day, Mrs. Singletary discovered that two checks were missing from her bank checkbook, which she kept "in a desk drawer in a spare bedroom" of the home. She then determined that "[t]here was a third check taken from a brokerage account[.]"

Mrs. Singletary "called the bank immediately" to place stop-payment orders on the missing checks,[1] and reported to Synergy that she believed that she "had checks stolen and that [Defendant] was the one who did it because [Defendant] was the only one that was in the house." As Mrs. Singletary noted, "besides [Defendant], it was just [her] and [her] husband between the last time [Mrs. Singletary] saw the checks on February 5th and the last time that [she] noticed . . . they were missing on February 8th[.]"

About six months later, on 23 August 2019, Mrs. Singletary received a notice regarding one of the checks on which she had placed a stop-payment order. The check, on which Mrs. Singletary's signature had been forged, was dated 20 July 2019 and

---

[1] Pursuant to N.C. Gen. Stat. § 25-4-403, "[a] customer . . . may stop payment of any item drawn on the customer's account . . . by an order to the bank describing the item . . . with reasonable certainty received at a time and in a manner that affords the bank a reasonable opportunity to act on it[.]" N.C. Gen. Stat. § 25-4-403(a) (2023).

made payable to "Shanitta Dixon" in the amount of $580.00. Officer Robert Ferencak of the Wilmington Police Department testified that in the course of his investigation he discovered that the name Shanitta Dixon was one of at least eight aliases used by Defendant.

On 22 June 2020, a New Hanover County grand jury returned an indictment charging Defendant with felony larceny of a chose in action, felony forgery of endorsement, and felony uttering a forged endorsement. On 16 August 2021, the grand jury returned a habitual-felon indictment against Defendant.

On 30 November 2022, this matter came on for jury trial. The same day, the jury found Defendant guilty of felony forgery of endorsement and felony uttering a forged endorsement,[2] and Defendant subsequently pleaded guilty to attaining habitual-felon status. On 9 December 2022, the trial court entered judgment, sentencing Defendant to a term of 36 to 56 months in the custody of the North Carolina Division of Adult Correction.[3]

Defendant gave oral notice of appeal.

## **DISCUSSION**

Defendant raises three issues on appeal. First, she argues that the trial court erroneously denied her motion to dismiss the charge of uttering a forged endorsement

---

[2] The State dismissed the charge of larceny of a chose in action as part of Defendant's habitual-felon plea arrangement.

[3] The record on appeal does not contain a copy of the judgment entered on Defendant's guilty plea to attaining habitual-felon status.

because the indictment insufficiently alleged the essential elements of that offense. Defendant also contends that the trial court erred by admitting Mrs. Singletary's out-of-court identification of Defendant based on a photograph shown to her by an officer in violation of the Eyewitness Identification Reform Act ("EIRA") and Defendant's due process rights. Finally, Defendant maintains that she received ineffective assistance of counsel.

## I.    Sufficiency of Indictment

Defendant first asserts that Count III of "[t]he indictment . . . was fatally defective because it failed to allege the essential elements of the offense of uttering a forged endorsement[,]" thereby depriving the trial court of subject-matter jurisdiction to enter judgment on this offense. We disagree.

### A. Preservation

Both "jurisdictional and non-jurisdictional pleading issues [are] automatically preserv[ed] . . . for appellate review." *State v. Singleton*, ___ N.C. ___, ___, 900 S.E.2d 802, 819 (2024). "Thus, issues related to alleged indictment defects, jurisdictional or otherwise, remain automatically preserved . . . ." *Id.* at ___, 900 S.E.2d at 821.

### B. Standard of Review

"The sufficiency of an indictment is a question of law reviewed de novo." *State v. White*, 372 N.C. 248, 250, 827 S.E.2d 80, 82 (2019). Under de novo review, an appellate court "considers the matter anew and freely substitutes its own judgment

for that of the lower tribunal." *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (cleaned up).

### C. Analysis

There are "two distinct species of indictment deficiencies, jurisdictional and non-jurisdictional[.]" *Singleton*, ___ N.C. at ___, 900 S.E.2d at 812. A jurisdictional defect, rendering a trial court without subject-matter jurisdiction, exists where the State's indictment "fails to charge a crime" against the people or laws of this State. *Id.* at ___, 900 S.E.2d at 805. "[J]urisdictional defects are rare . . . ." *Id.* at ___, 900 S.E.2d at 805; *e.g., id.* at ___, 900 S.E.2d at 818 (explaining that jurisdictional defects might include, for example, "charging a defendant with a crime committed in another state" or charging a defendant "with wearing a pink shirt on a Wednesday").

A nonjurisdictional defect occurs where the indictment fails "to allege with sufficient precision facts and elements of [the] crime[.]" *Id.* at ___, 900 S.E.2d at 814. Thus, "[t]aken together with the purpose of an indictment to put the defendant on notice of the crime being charged and to protect the defendant from double jeopardy, a test for indictment validity becomes whether the indictment alleges facts supporting the essential elements of the offense to be charged." *State v. Stewart*, ___ N.C. ___, ___, 900 S.E.2d 652, 656 (2024) (cleaned up). This category of deficiency is nonjurisdictional because "so long as a crime against the laws and people of this State has been alleged, defects in indictments do not deprive the trial court of jurisdiction." *Id.* at ___, 900 S.E.2d at 655. To obtain relief on the basis of a nonjurisdictional defect,

a defendant must "show that the indictment contained a statutory or constitutional defect and that such error was prejudicial." *Id.* at ___, 900 S.E.2d at 655.

Such is the case before us, in which Defendant does not assert that the indictment fails to charge a crime. Rather, Defendant contends that the indictment fails to allege the facts and elements of the crime of felony uttering a forged endorsement with sufficient precision, leaving her without notice of the offense being charged and unable to prepare a defense. As Defendant explains, "[w]hile counts I and II [of the indictment] identify a specific check number, Count III does not provide any information regarding the allegedly forged check except to state that [she] uttered 'a check, which contained a forged and falsely made endorsement of GLORIA C. SINGLETARY.' "

N.C. Gen. Stat. § 14-120 criminalizes the act of uttering a forged paper or uttering an instrument containing a forged endorsement:

> If any person, directly or indirectly, whether for the sake of gain or with intent to defraud or injure any other person, shall falsely make, forge or counterfeit any endorsement on any instrument . . . , whether such instrument be genuine or false, or shall knowingly utter or publish any such instrument containing a false, forged or counterfeited endorsement or, knowing the same to be falsely endorsed, shall pass or deliver or attempt to pass or deliver any such instrument containing a forged endorsement to another person, the person so offending shall be guilty of a Class I felony.

N.C. Gen. Stat. § 14-120.

The essential elements of uttering a forged endorsement are therefore that (1) the defendant "passed a check"; (2) "such check contained an endorsement which was forged"; (3) the defendant "knew that such endorsement was forged"; and (4) the defendant "acted for the sake of gain or with the intent to defraud or injure any other person." *State v. Forte*, 80 N.C. App. 701, 702, 343 S.E.2d 261, 262, *disc. review denied*, 316 N.C. 735, 345 S.E.2d 400 (1986).

Here, Defendant was charged in Count III of the indictment with the offense of uttering a forged endorsement. The indictment cites the relevant statute—N.C. Gen. Stat. § 14-120—and lists an offense date of "02/07/2019-07/26/2019[.]" Count III of the indictment then alleges that, in New Hanover County, Defendant "unlawfully, willfully and feloniously did utter, publish, pass and deliver as true to NORTH CAROLINA STATE EMPLOYEE'S CREDIT UNION (LELAND BRANCH, BRUNSWICK COUNTY) a check, which contained a forged and falsely made endorsement of GLORIA C. SINGLETARY." Count III of the indictment further alleges that Defendant "knew at the time that the endorsement was falsely made and forged and acted for the sake of gain and with the intent to injure and defraud."

Count III of the indictment alleges facts supporting each essential element of the offense. "[T]he indictment states the charge against [D]efendant in a plain, intelligible, and explicit manner, citing the statute under which [D]efendant was charged. Defendant was placed on notice of the charge levied against h[er], allowing h[er] to prepare for trial and protecting h[er] from double jeopardy." *Stewart*, ___ N.C.

at ___, 900 S.E.2d at 656. Indeed, Defendant did not "allege[ ] that [the indictment] failed to put [her] on notice of the charged offense[,]" a copy of the check at issue having been produced by the State in discovery. *Id.* at ___, 900 S.E.2d at 656. Accordingly, Count III of the indictment is facially valid, having sufficiently alleged each essential element of N.C. Gen. Stat. § 14-120.

"Because no error occurred, we need not consider the issue of prejudice." *Singleton*, ___ N.C. at ___, 900 S.E.2d at 823; *see id.* at ___ n.16, 900 S.E.2d at 821 n.16. Defendant's argument is overruled.

## II.     Compliance with the Eyewitness Identification Reform Act

Next, Defendant contends that Mrs. Singletary's "out-of-court identification of [Defendant] based on a single photograph" did not comport with the requirements of the EIRA and that this error was prejudicial. We conclude that Defendant's argument is misplaced.

### A. Standard of Review

"Only if the EIRA applies do we need to reach Defendant's arguments about a violation of the EIRA and the trial court's alleged errors in relation to any such violation." *State v. Morris*, 288 N.C. App. 65, 81, 884 S.E.2d 750, 762, *appeal dismissed*, 385 N.C. 315, 891 S.E.2d 288 (2023). "The applicability of the EIRA presents an issue of statutory interpretation[,]" which we review de novo. *Id.*

### B. Analysis

"The EIRA, codified in N.C. Gen. Stat. § 15A-284.52, establishes standard procedures for law enforcement officers when conducting out-of-court eyewitness identifications of suspects." *State v. Crumitie,* 266 N.C. App. 373, 376, 831 S.E.2d 592, 594 (2019), *disc. review denied,* 374 N.C. 269, 839 S.E.2d 851 (2020). "The EIRA includes required procedures for . . . show-ups . . . ." *Morris,* 288 N.C. App. at 82, 884 S.E.2d at 762.

"Show-ups are procedures in which an eyewitness is presented with a single live suspect for the purpose of determining whether the eyewitness is able to identify the perpetrator of a crime." *Crumitie,* 266 N.C. App. at 377, 831 S.E.2d at 594–95 (cleaned up). The EIRA bans photographic show-ups. *See Morris,* 288 N.C. App. at 82, 884 S.E.2d at 762 ("[A] show-up can only permissibly include a live person."); *see also id.* at 83–84, 884 S.E.2d at 763. However, not all out-of-court identifications are show-ups as defined in and subject to the EIRA.

In *Morris,* a witness identified the defendant after "seeing a single photograph of [the defendant] and being asked if he was the person from whom [the witness had] bought the drugs." *Id.* at 83, 884 S.E.2d at 762–63. The defendant challenged the identification as "a banned photographic show-up" in violation of the provisions of the EIRA. *Id.* at 84, 884 S.E.2d at 763. This Court explained that the EIRA show-up provisions did not apply "where the State already had identified" and charged the defendant as the perpetrator of the crime. *Id.* at 85, 884 S.E.2d at 764. Accordingly, because "the identification . . . did not seek the same purpose as a show-up, it was not

a show-up under the EIRA[,]" and therefore there could be no EIRA violation. *Id.* at 84, 884 S.E.2d at 764.

Similarly, in *Crumitie,* a law enforcement officer responding to a reported shooting at an apartment complex noticed a man running in the area. 266 N.C. App at 375, 831 S.E.2d at 593. When the officer reached the injured victim, she "wrote down [the] defendant's name" and the officer looked up the defendant's Department of Motor Vehicles record. *Id.* at 375, 831 S.E.2d at 594. The officer recognized the "DMV photograph of [the] defendant . . . as the same man he had seen running [away] when he arrived at the scene." *Id.* This Court concluded that the officer's "inadvertent out-of-court identification of [the] defendant, based on a single DMV photograph [that he] accessed . . . , was neither a lineup or show-up under the EIRA, and thus not subject to those statutory procedures." *Id.* at 377, 831 S.E.2d at 595.

Here, Defendant challenges an out-of-court photographic identification of Defendant by Mrs. Singletary about which Officer Ferencak testified on direct examination:

> [THE STATE:] Could you tell the members of the jury about your meeting with Mrs. Singletary?
>
> [OFFICER FERENCAK:] Certainly. So [I] went to the residence, met with Mrs. Singletary. Dr. Singletary was there in another room. Spoke with Mrs. Singletary one-on-one, . . . and she was able to confirm for me that she hadn't given permission for anybody else to have this check, that the check had been stolen when only one other individual, [Defendant], had been in the house, and I actually brought a photo of [Defendant] from our police records system, and

I showed her the photo—

[DEFENSE COUNSEL]: I object, Your Honor. I'd like to be heard.

. . . .

[T]wo quick objections.

. . . .

Showing a single photograph to a witness violates the eyewitness identification act, which requires a photo lineup and procedure, detective not associated with the case to show six photographs, give the witness the speech about you may or may not see the person who's involved in the case . . . .

The second objection is that Mrs. Singletary did not testify to identifying the photograph in her direct testimony. . . .

So those are my two objections.

THE COURT: Objection is overruled.

. . . .

[THE STATE:] And you spoke with [Mrs. Singletary], and what was the conversation?

[OFFICER FERENCAK:] So she was able to confirm for me . . . that the only person that was in the residence other than she and her husband at the time that the check would have been stolen was [Defendant].

. . . .

I brought along a photo of the individual, [Defendant] Shanitta Dixon/Shanita Simpson, and I showed her the photo, saying, Is this the Shanitta

- 11 -

Simpson/Shanitta Dixon you were speaking of? She confirmed that for me.

. . . .

[DEFENSE COUNSEL]: I'll repeat my objections from earlier, but I don't need to be heard.

The trial court again overruled Defendant's objections and then admitted the photograph into evidence as State's Exhibit 5.

Defendant argues that Mrs. Singletary's identification of Defendant as the person pictured in State's Exhibit 5, as recounted in Officer Ferencak's testimony, constituted "an unlawful 'show-up' that plainly failed to comply with the EIRA." She further contends that "at a minimum," she "was entitled to a jury instruction 'that it may consider credible evidence of . . . noncompliance [with the EIRA] to determine the reliability of eyewitness identifications.' " N.C. Gen. Stat. § 15A-284.52(d). The State asserts that the out-of-court identification of Defendant by Mrs. Singletary about which Officer Ferencak testified was not subject to the EIRA's statutory procedures. We agree with the State.

As in *Morris*, the procedure of which Defendant complains here was, "critically, . . . not conducted to try to determine if a suspect was the perpetrator." *Morris*, 288 N.C. App. at 84, 884 S.E.2d at 764. Officer Ferencak accessed the law enforcement database photograph of Defendant *after* Mrs. Singletary reported the missing checks and the fraudulent check that had been made payable to Defendant, and *after* Mrs. Singletary named Defendant as the only individual other than herself and her

husband who had an opportunity to take the checks. "As a result," Mrs. Singletary and officers "had already concluded" that Defendant "was the perpetrator" at the time that Mrs. Singletary identified Defendant as the individual in State's Exhibit 5. *Id.* "Since the identification here did not seek the same purpose as a show-up, it was not a show-up under the EIRA." *Id.*

"[T]he EIRA does not apply to the identification at hand"; thus, the trial court did not err in denying Defendant's objections to the admission of the identification as an EIRA violation. *Id.* at 85, 884 S.E.2d at 764. In turn, because the EIRA is inapplicable here, Defendant's arguments regarding prejudice and the need for a jury instruction are inapposite.

### III. Due Process Protections

Finally, Defendant argues that, even if the identification procedure here did not violate the EIRA, "[t]he admission of the out-of-court identification violated [her] due process rights because it was impermissibly suggestive and created a substantial likelihood of irreparable misidentification."

### A. Direct Appeal

Defendant acknowledges that "[b]ecause [she] did not raise a due process challenge below, this Court's review is pursuant to Rule 2."

"[D]ue process protections exist on top of the EIRA's statutory protections." *Morris*, 288 N.C. App. at 85, 884 S.E.2d at 764. Nonetheless, a party must "make a timely request, objection, or motion at trial, stating the specific grounds for the

desired ruling in order to preserve an issue for appellate review." *State v. Mulder*, 233 N.C. App. 82, 86, 755 S.E.2d 98, 101 (2014) (cleaned up). "As a general rule, constitutional questions not raised and passed on by the trial court will not ordinarily be considered on appeal." *Id.* (cleaned up); *accord* N.C.R. App. P. 10(a)(1).

"Despite the rule disallowing appellate review of issues not raised at trial, our Supreme Court has stated that the appellate courts may elect to review an unpreserved [constitutional] issue on appeal pursuant to our supervisory power over the trial divisions and Rule 2 of the North Carolina Rules of Appellate Procedure." *Mulder*, 233 N.C. App. at 87, 755 S.E.2d at 101 (cleaned up). The decision to invoke Rule 2 "is entirely discretionary" and is used only in exceptional cases to prevent manifest injustice to a party. *Id.*

We conclude that Defendant has not shown error by the trial court sufficient for this Court, in its discretion, to invoke Rule 2 to prevent a manifest injustice that occurred to Defendant.

Our Supreme Court has explained that in addressing the constitutional requirements of due process in eyewitness identification, we must determine "whether the identification procedure was so suggestive as to create a substantial likelihood of irreparable misidentification." *State v. Malone*, 373 N.C. 134, 146, 833 S.E.2d 779, 787 (2019) (citation omitted).

In the case at bar, Mrs. Singletary reported the fraudulent check, which was made payable to Defendant, as well as the other missing checks, and Mrs. Singletary

reported that Defendant was the only individual other than Mrs. Singletary and her husband who had access to the checks during the time that the checks must have been taken. Subsequently, Officer Ferencak used the name given to him by Mrs. Singletary to access Defendant's law enforcement database photograph. He then showed the photograph to Mrs. Singletary and asked, "Is this the Shanitta Simpson/Shanitta Dixon you were speaking of?" Mrs. Singletary confirmed that Defendant was the individual in the photograph later admitted at trial as State's Exhibit 5.

Our Supreme Court has cautioned that the appellate "courts have widely condemned the practice of showing suspects singly to persons for the purpose of identification." *Morris*, 288 N.C. App. at 76, 884 S.E.2d at 758 (quoting *State v. Yancey*, 291 N.C. 656, 661, 231 S.E.2d 637, 640 (1977)). However, in the present case, Mrs. Singletary had identified Defendant *prior* to being shown Defendant's law enforcement database photograph, "independent of [any alleged] impermissibly suggestive identification procedure conducted by the State." *Malone*, 373 N.C. at 152, 833 S.E.2d at 791. Even assuming that Mrs. Singletary's viewing of Defendant's photograph was "inherently suggestive[,]" Defendant fails to demonstrate that the procedure "create[d] a substantial likelihood of irreparable misidentification." *Id.* at 146, 833 S.E.2d at 787 (citation omitted).

"At this second step, the central question is whether under the totality of the circumstances the identification was reliable even if the confrontation procedure was

suggestive." *Morris*, 288 N.C. App. at 71–72, 884 S.E.2d at 756 (cleaned up). Our

Supreme Court has identified five factors for use in the totality of the circumstances

analysis:

> [(1)] the opportunity of the witness to view the accused at the time of the crime[; (2)] the witness' degree of attention at the time[; (3)] the accuracy of [the] prior description of the accused[; (4)] the witness' level of certainty in identifying the accused at the time of the confrontation[;] and [(5)] the time between the crime and the confrontation.

*Malone,* 373 N.C. at 147, 833 S.E.2d at 787 (citation omitted).

A court need not conclude that "all five factors weigh against a substantial

likelihood of irreparable misidentification to admit the evidence over due process

concerns." *Morris*, 288 N.C. App. at 78, 884 S.E.2d at 760 (citation omitted). "The

factors must ultimately be weighed against the corrupting effect of the suggestive

procedure itself." *Id.* (cleaned up).

Here, as concerns the first and second factors, Mrs. Singletary had a clear

opportunity to view Defendant. Mrs. Singletary saw Defendant twice, both during the

daytime and in the home with the lights on. Mrs. Singletary showed Defendant

around her home, and Defendant was not wearing a face mask while she interacted

with Mrs. Singletary. There was also every incentive to pay close attention to

Defendant: Mrs. Singletary planned to run some errands while Defendant cared for

her husband, entrusting Defendant with her ill husband and her home. Thus, the

first and second factors "count[ ] against a due process violation." *Id*. at 79, 884 S.E.2d at 760.

There does not appear to be any information as to Mrs. Singletary's physical description of Defendant, or its accuracy if she gave a description. Therefore, the third factor neither supports nor weighs against a determination of a due process violation.

As for Mrs. Singletary's "level of certainty in identifying the accused at the time of the confrontation," *Malone*, 373 N.C. at 147, 833 S.E.2d at 787 (citation omitted), she confirmed that the photograph produced by the officer was one of Defendant, who she knew by name independent of any suggestion by law enforcement officers. *See Crumitie*, 266 N.C. App. at 378–79, 831 S.E.2d at 595–96. This fourth factor weighs against a due process violation.

Finally, it is undisputed that more than six months had passed between the day of the crime and the confrontation. However, the length in time between the offense and the identification is mitigated by the fact that Mrs. Singletary was familiar with Defendant prior to being shown the photograph. This factor slightly weighs in favor of a due process violation.

"Weighing all those factors as part of the totality of the circumstances against the corrupting influence of the identification procedure itself, the procedure did not create a substantial likelihood of irreparable misidentification." *Morris*, 288 N.C. App at 80, 884 S.E.2d at 761 (cleaned up). Therefore, Defendant's due process rights were not violated by the admission of the out-of-court identification, and Defendant has

failed to show an error such that hers is "the exceptional case" in which the invocation of Rule 2 is appropriate. *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation omitted).

**B. Ineffective Assistance of Counsel**

We likewise reject Defendant's alternative arguments that trial counsel's failure to move to suppress the out-of-court identification on either EIRA or due process grounds constituted ineffective assistance of counsel.

"A defendant's right to counsel, as guaranteed by the Sixth Amendment to the United States Constitution, includes the right to effective assistance of counsel." *State v. Perdomo*, 276 N.C. App. 136, 144, 854 S.E.2d 596, 602 (2021) (citation omitted), *disc. review denied*, 380 N.C. 678, 868 S.E.2d 859 (2022). "To succeed on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *State v. Worley*, 268 N.C. App. 300, 310, 836 S.E.2d 278, 286 (2019) (cleaned up), *disc. review denied*, 375 N.C. 287, 846 S.E.2d 285 (2020). "The fact that counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 248 (1985).

As discussed above, the identification here 1) does not fall "under the EIRA [and is] not subject to those statutory procedures," *Crumitie*, 266 N.C. App. at 377,

831 S.E.2d at 595, and 2) was not "so suggestive as to create a substantial likelihood of irreparable misidentification[,]" *Malone*, 373 N.C. at 146, 833 S.E.2d at 787 (citation omitted). Defendant's trial counsel was not ineffective in failing to file a motion to suppress on bases that lacked merit. Accordingly, Defendant's ineffective assistance of counsel arguments are overruled.

## IV. Clerical Error

Finally, we note that the judgment in this case indicates that the trial court sentenced Defendant for felony forgery of endorsement and felony uttering a forged endorsement pursuant to Defendant's guilty plea, when the record reveals that Defendant was found guilty by jury verdict of these charges and pleaded guilty only to the charge of attaining habitual felon status. Because this error "result[ed] from a minor mistake or inadvertence . . . in writing or copying something on the record," it is a clerical error, and therefore we remand to the trial court for the limited purpose of correcting this error. *State v. Allen*, 249 N.C. App. 376, 380, 790 S.E.2d 588, 591 (2016) (citation omitted).

## CONCLUSION

For the foregoing reasons, Defendant received a fair trial, free from error. We remand to the trial court for the limited purpose of correcting the clerical error in the judgment as indicated herein.

NO ERROR; REMANDED FOR CORRECTION OF CLERICAL ERROR.

Judges HAMPSON and THOMPSON concur.